CITY OF COLORADO
SPRINGS, Petitioner,

v.

The INDUSTRIAL COMMISSION OF
the STATE OF COLORADO and
Fernando E. Santos, Respondents.

No. 86SC34.

Supreme Court of Colorado,
En Banc.

Jan. 25, 1988.

James G. Colvin II, City Atty., Jackson
L. Smith, Asst. City Atty., Michael J.

Heydt, Chief Litigation Atty., Michele Sebastian Price, Corporate Atty., Colorado Springs, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Dani R. Newsum, Asst. Atty. Gen., Denver, for respondent Indus. Com'n of Colorado.

Law Offices of McKendree & Toll, Donald J. Mares, Denver, for respondent Fernando E. Santos.

Gerald E. Dahl, Denver, for amicus curiae Colorado Mun. League.

KIRSHBAUM, Justice.

In *City of Colorado Springs v. Industrial Commission,* 720 P.2d 601 (Colo.App. 1985), the Court of Appeals affirmed an order of the Industrial Commission (the Commission) awarding unemployment compensation benefits to Fernando E. Santos (Santos), the respondent. The City of Colorado Springs (the City) had previously discharged Santos from employment for unsatisfactory performance and conduct unbecoming a City employee. We granted certiorari to review the conclusion of the Court of Appeals that the City's action did not bar the Commission's determination that Santos was entitled to full unemployment compensation benefits, and now affirm.

## I

From September 1972 until April 1984, Santos was employed as an administrative clerk in the City Clerk and Treasurer's Office. In February of 1984, he also worked part-time as a security guard at a local business establishment. On February 20, 1984, Santos underwent emergency abdominal surgery. The next day Santos' wife telephoned the City Clerk–Treasurer, informed him that Santos had undergone major surgery and stated that her husband would be unable to return to the office for an extended period of time.

Following his release from the hospital, Santos was advised by his physician not to return to work at his job with the City during his convalescence because the sedentary nature of the work might result in the serious complication of femoral thrombophlebitis, or blood clotting in the lower extremities. The physician prescribed a regimen of extensive walking each day and, as a means of fulfilling that regimen, permitted Santos to return to his part-time security guard job.

On two occasions in early March, the City Clerk–Treasurer telephoned Santos' residence, but Santos was not at home. On March 16, 1984, the Clerk–Treasurer sent a letter to Santos requesting a physician's letter explaining the reason for Santos' lengthy absence from work. The physician sent a responsive letter indicating that he would not allow his patient to return to the City job until March 26 because the nature of the work might cause clotting in the lower extremities. Santos returned to his job with the City on March 26, 1984.

On March 26, in response to a question by the Clerk–Treasurer, Santos stated that he had worked as a security guard during his convalescence. On April 6, 1984, Santos was discharged from his job with the City due to unsatisfactory performance and conduct unbecoming a City employee. Both of these grounds were based on an alleged abuse of the City's sick leave policies. Pursuant to applicable administrative procedures, Santos appealed his discharge to the City Manager. The manager concluded that the discharge was proper because Santos failed to ask his supervisor if he could return to his City job with a lightened workload during his convalescence and failed to initiate contact with his supervisor periodically during his convalescence to justify his continuing sick leave. Santos appealed this decision to the municipal court, which court affirmed on the ground that the City Manager had neither exceeded his jurisdiction nor abused his discretion.[1] Santos did not seek further appellate review of his discharge.

---

1. The City's Personnel Policies and Procedures manual provides that "[t]he [municipal] judge shall not extend his review further than to determine whether the City Manager exceeded his jurisdiction or abused his discretion."

Santos then applied for unemployment compensation benefits. The City filed a protest, arguing that under the doctrine of collateral estoppel the City Manager's determination that Santos was properly discharged prohibited Santos from obtaining unemployment compensation. The Deputy of the Division of Employment and Training rejected this argument and concluded that Santos was entitled to a full award of benefits pursuant to section 8–73–108(4)(b), 3 C.R.S. (1983 Supp.) (now codified at § 8–73–108(4)(b), 3B C.R.S. (1986)).

The City appealed, and a hearing was conducted by a Commission referee. The referee affirmed the Deputy's decision, concluding that Santos had acted reasonably and in accordance with medical advice, had ensured that his employer was notified immediately of his separation from employment and had responded promptly to his employer's request for information. The referee observed that, although City policy allowed employees in some circumstances to return to work early on light-duty assignments, the City's personnel rules placed no affirmative obligation upon an employee to initiate a request for light-duty work.

In affirming the referee's decision, the Commission noted that in its opinion there was substantial and competent evidence to support the conclusion that Santos had not violated any City policy. On appeal, the Court of Appeals affirmed the Commission's order. The Court of Appeals concluded that because unemployment compensation is a matter of statewide concern, home rule cities do not have subject matter jurisdiction concerning awards of unemployment benefits and, therefore, the Commission properly refused to apply the doctrine of collateral estoppel.

## II

■ The City argues that the City Manager's determination that Santos should not be reinstated in his job collaterally estops the Commission from concluding that Santos should receive unemployment compensation benefits. We disagree.

## A

■ Collateral estoppel, or issue preclusion, bars relitigation of an issue determined at a prior proceeding if: (1) the issue precluded is identical to an issue actually determined in the prior proceeding; (2) the party against whom estoppel is sought was a party to or was in privity with a party to a prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Salida School Dist. R–32–J v. Morrison*, 732 P.2d 1160 (Colo.1987); *Industrial Comm'n v. Moffat County School Dist. RE No. 1*, 732 P.2d 616 (Colo. 1987); *People v. Hearty*, 644 P.2d 302 (Colo.1982); *Pomeroy v. Waitkus*, 183 Colo. 344, 517 P.2d 396 (1973). Whether an employee has been properly discharged in accordance with applicable employment policies is an issue quite distinct from whether the employee should be disqualified from receipt of unemployment compensation benefits under pertinent provisions of the Colorado Employment Security Act. *Gonzales v. Industrial Comm'n*, 740 P.2d 999 (Colo.1987); *Industrial Comm'n v. Moffat County School Dist. RE No. 1*, 732 P.2d 616.

■ Santos was discharged for unsatisfactory performance and conduct unbecoming a City employee. However, an employee is not automatically denied unemployment benefits simply because the employee has been discharged; rather, benefits may be denied only if the discharge was due to one or more of several statutorily enumerated causes. *Gonzales v. Industrial Comm'n*, 740 P.2d 999; *Industrial Comm'n v. Moffat County School Dist. RE No. 1*, 732 P.2d 616. The statutory provision relevant to the Commission's inquiry of whether Santos was entitled to unemployment benefits is section 8–73–108(9)(a), 3 C.R.S. (1983 Supp.) (now codified at § 8–73–108(5)(e), 3B C.R.S. (1986)). That statute provides in pertinent part as follows:

(e) Subject to the maximum reduction consistent with federal law ... if a sepa-

ration from employment occurs for any of the following reasons, the employer from whom such separation occurred shall not be charged for benefits which are attributable to such employment and, because any payment of benefits which are attributable to such employment out of the fund as defined in section 8–70–103(13) shall be deemed to have an adverse effect on such employer's account in such fund, no payment of such benefits shall be made from such fund:

. . . .

(XX) For other reasons including, but not limited to, excessive tardiness or absenteeism, sleeping or loafing on the job, *or failure to meet established job performance or other defined standards,* unless such failure is attributable to factors listed in paragraph (b) or subsection (4) of this section.

§ 8–73–108(5)(e), 3B C.R.S. (1986) (emphasis added). Subsection (4) provides in pertinent part:

(4) **Full award.** An individual separated from a job shall be given a full award of benefits if any of the following reasons and pertinent conditions related thereto are determined by the division to have existed. The determination of whether or not the separation from employment shall result in a full award of benefits shall be the responsibility of the division. The following reasons shall be considered, along with any other factors which may be pertinent to such determination:

. . . .

(b)(I) The health of the worker is such that he is separated from his employment and must refrain from working for a period of time, but at the time of filing his claim he is able and available for work, or the worker's health is such that he must seek a new occupation, or the health of the worker, his spouse, or his dependent child is such that the worker must leave the vicinity of his employment; except that, if the health of the worker or that of his spouse or his dependent child has caused the separation from work, the worker, in order to be entitled to a full award, must have complied with the following requirements: Informed his employer of the condition of his health or the health of his spouse or dependent child prior to his separation from employment; substantiated the cause by a competent written medical statement issued prior to the date of his separation from employment when so requested by the employer prior to the date of his separation from employment or within a reasonable period thereafter; submitted himself or his spouse or his dependent child to an examination by a licensed practicing physician selected and paid by the interested employer when so requested by the employer prior to the date of his separation from employment or within a reasonable period thereafter; and submitted himself, his spouse, or his dependent child to an examination by a licensed practicing physician selected and paid by the division when so requested by the division.

§ 8–73–108(4), 3B C.R.S. (1986).

▮ It is undisputed that Santos was separated from work to undergo emergency surgery; that he ensured that his employer was notified of his condition and of the need for an extended recovery period within a reasonable time after the surgery; that he responded promptly to his employer's request for information[2]; and that although the employer had the option under its own policies to require examination by a second physician, it did not make such a request. Moreover, as the Commission ref-

---

**2.** Although ambiguous, City policy apparently requires notification of the employer of intended use of sick leave only prior to the first workday missed. The City's Personnel Policies and Procedures manual provides in pertinent part:

To be eligible for paid sick leave, the intended use of sick leave must be reported to the immediate supervisor prior to the start of the scheduled workday or prior to leaving the work site. An employee who fails to do so may be subject to disciplinary action.

The Clerk–Treasurer testified that although City policy could be interpreted to require notification of the employer prior to each day's absence from work, no such policy had ever been implemented in his department.

eree observed, City policy did not unambiguously impose any affirmative duty upon an employee in circumstances such as Santos experienced to request a light-duty assignment during convalescence.[3] *See* § 8–73–108(5)(e)(VII), 3B C.R.S. (1986) (violation of company rule may require disqualification from unemployment compensation benefits). Under these circumstances, the record supports the Commission's determination that Santos was entitled to unemployment compensation benefits.[4] *See* § 8–74–107(6), 3B C.R.S. (1986).

## B

■ The City also asserts that the Commission's authority to make determinations respecting the award of unemployment compensation benefits is circumscribed by the City's home rule power under article XX, section 6, of the Colorado Constitution to deal with personnel issues of local concern.[5] While certainly charter provisions and legislation of a home rule city supersede conflicting state statutes in matters of purely local and municipal concern, in matters of statewide concern state statutes supersede local charter provisions and ordinances of home rule cities. *City & County of Denver v. Colorado River Water Conservation Dist.,* 696 P.2d 730 (Colo. 1985); *Denver & Rio Grande Western R.R. Co. v. City & County of Denver,* 673 P.2d 354 (Colo.1983). As the City itself recognizes,[6] while the determination of whether a City employee should be reinstated in a City job may be a matter of local concern governed by City policies, the determination of whether an employee is

3. The City's Personnel Policies and Procedures manual provides in pertinent part:

An employee, upon recommendation of a physician, may be placed on light-duty (provided work is available) for a period not to exceed 90 calendar days when such employee has a temporary disability that precludes performance of regularly assigned duties. Light-duty assignments must be coordinated with the Safety Director and approved by the Department/Division Head.

4. To the extent that the decisions in *Umberfield v. School Dist. No. 11,* 185 Colo. 165, 522 P.2d 730 (1974), and *Jefferson County School Dist. v. Industrial Comm'n,* 698 P.2d 1350 (Colo.App. 1984), might be construed to mandate a different result, those cases were overruled in effect by our decision in *Industrial Comm'n v. Moffat County School Dist. RE No. 1,* 732 P.2d 616 (Colo.1987).

5. Article XX, section 6, of the Colorado Constitution provides in pertinent part:

**Home rule for cities and towns.** The people of each city or town of this state, having a population of two thousand inhabitants as determined by the last preceding census taken under the authority of the United States, the state of Colorado or said city or town, are hereby vested with, and they shall always have, power to make, amend, add to or replace the charter of said city or town, which shall be its organic law and extend to all its local and municipal matters.

Such charter and the ordinances made pursuant thereto in such matters shall supersede within the territorial limits and other jurisdiction of said city or town any law of the state in conflict therewith.

. . . .

From and after the certifying to and filing with the secretary of state of a charter framed and approved in reasonable conformity with the provisions of this article, such city or town, and the citizens thereof, shall have the powers set out in sections 1, 4 and 5 of this article, and all other powers necessary, requisite or proper for the government and administration of its local and municipal matters, including power to legislate upon, provide, regulate, conduct and control:

a. The creation and terms of municipal officers, agencies and employments; the definition, regulation and alteration of the powers, duties, qualifications and terms or tenure of all municipal officers, agents and employees;

. . . .

It is the intention of this article to grant and confirm to the people of all municipalities coming within its provisions the full right of self-government in both local and municipal matters and the enumeration herein of certain powers shall not be construed to deny such cities and towns, and to the people thereof, any right or power essential or proper to the full exercise of such right.

The statutes of the state of Colorado, so far as applicable, shall continue to apply to such cities and towns, except insofar as superseded by the charters of such cities and towns or by ordinance passed pursuant to such charters.

6. The City's Personnel Policies and Procedures manual provides in pertinent part:

The State of Colorado Employment Security Act provides that a separated employee may apply for unemployment insurance. Eligibility for, and the amount of compensation, are determined by the State. The City pays the entire cost of this benefit.

entitled to unemployment compensation benefits is a matter of statewide concern governed by state statutory provisions. *See Gonzales v. Industrial Comm'n*, 740 P.2d 999 (Colo.1987); *Industrial Comm'n v. Moffat County School Dist. RE No. 1*, 732 P.2d 616 (Colo.1987); § 8–70–102, 3B C.R.S. (1986) (unemployment is a subject of general concern requiring action by the General Assembly to promote the general welfare of citizens of the state). The Commission's exercise of its authority under the provisions of the Colorado Employment Security Act did not violate the home rule provisions of article XX, section 6, of the Colorado Constitution.

### III

The judgment of the Court of Appeals is affirmed.