BENNETT COLLEGE, Bennett College Foundation, Inc., and Pace University, Petitioners,

v.

UNITED BANK OF DENVER, NATIONAL ASSOCIATION, Charles W. Ennis, St. John's Episcopal Cathedral, Dumb Friends League Animal Shelter, Metropolitan Opera Guild, Inc., and Marist College, Respondents.

No. 89SC297.

Supreme Court of Colorado,
En Banc.

Sept. 10, 1990.

Rehearing Denied Nov. 13, 1990.

Ireland, Stapleton, Pryor & Pascoe, P.C., Monte Pascoe, Margaret L. Toal–Rossi, Jennifer A. Ostom, Denver, for petitioners.

Davis, Graham & Stubbs, Richard W. Daily, Susan K. Morath, Denver, for respondents St. John's Episcopal Cathedral, Dumb Friends League Animal Shelter, and Metropolitan Opera Guild, Inc.

No Appearance, on behalf of respondents United Bank of Denver, Nat. Ass'n., Charles W. Ennis, and Marist College.

Justice VOLLACK delivered the Opinion of the Court.

Bennett College, Bennett College Foundation, Inc., and Pace University (the Col-

leges) petitioned for certiorari review of the court of appeals decision in *United Bank of Denver v. St. John's Episcopal Cathedral*, Nos. 87CA1050 & 87CA1051 (Colo.App. March 23, 1989) (unpublished opinion). In *United Bank of Denver*, the court of appeals affirmed the Denver probate court's summary judgment entered against the Colleges. We granted certiorari to consider whether the court of appeals properly applied the doctrine of collateral estoppel.[1] We affirm.

## I.

### A.

In 1970, Margaret Collbran, an alumna of Bennett College, established a trust, with the United Bank of Denver as the trustee (the Collbran Trustee), providing that upon her death the remainder of the trust would be "divided into equal parts and distributed outright to each of the following organizations" in existence at the time of her death: St. John's Episcopal Cathedral, Dumb Friends League Animal Shelter, Metropolitan Opera Guild, Inc., and Bennett College.

In May 1977, Bennett College, an all-women's college, filed for bankruptcy in federal district court, which adjudicated Bennett College bankrupt in October 1977. By March 1978, the bulk of Bennett College's assets had been liquidated and disbursed to creditors. The bankruptcy estate was closed in 1984.

Following Collbran's death on February 22, 1986, the Collbran Trustee petitioned the Denver Probate Court for instructions on whether or how it should distribute Bennett College's interest in the trust corpus. In the probate proceedings, St. John's Epis-

copal Cathedral, Dumb Friends League Animal Shelter, and Metropolitan Opera Guild (the Charities) argued that Bennett College's interest in the trust corpus should be distributed equally among them because Bennett College is no longer in existence.[2] Bennett College Foundation, Inc., (Bennett Foundation), and Bennett College, which has not received students since 1977 although the state of New York has not divested the college of its school charter, and Pace University[3] argued that Bennett College was still in existence at the time of Collbran's death.

The Charities subsequently filed two motions for summary judgment against the Colleges, arguing that they were collaterally estopped and judicially estopped from asserting that Bennett College was still in existence at Collbran's death. The motions for summary judgment were based on previous New York court cases following the adjudication of Bennett College's bankruptcy in which the college's entitlement to funds unrelated to the Collbran trust was questioned. The probate court granted the Charities' motions for summary judgment, and the court of appeals affirmed.

### B.

Because of the limited nature of our review in this case, *see* note 1, *supra* at 365, we consider only the New York case on which the probate court and court of appeals relied in holding that the Colleges were collaterally estopped from asserting that Bennett College was still in existence at the time of Collbran's death.

In 1937, Margaret Gage, a New York resident and alumna of Bennett Junior Col-

---

1. We also granted certiorari on the question of whether the court of appeals erred in applying the doctrine of judicial estoppel. Because we conclude that the court of appeals did not err in applying the doctrine of collateral estoppel, we need not, and do not, consider whether the court of appeals erred in its application of judicial estoppel. *See, e.g., Industrial Comm'n v. Moffat County School Dist. RE No. 1*, 732 P.2d 616, 620 (Colo.1987).

2. Bennett College's one-quarter interest in the trust corpus is worth more than $7 million.

3. After Bennett College filed for bankruptcy, Pace University, located in New York City, agreed *inter alia* to assume Bennett College's student loan administration obligations, maintain the college's records, raise funds for the Bennett Foundation, administer a Bennett College scholarship fund, and permit the college's alumnae office to operate on the university's property.

lege, established a trust fund and named Bennett College as its beneficiary.[4] The trust provided that another charitable beneficiary could be named "[i]n the event that [Bennett College] cease[s] to exist, whether by reason of dissolution, merger, consolidation or otherwise." Bankers Trust Company (the Gage Trustee) eventually was named the trustee. The Gage Trustee stopped disbursing trust moneys to Bennett College in September 1977, after the college had filed for bankruptcy in May 1977.

In May 1979, the Gage Trustee initiated a proceeding in the Supreme Court of New York for, *inter alia,* a ruling that Bennett College had ceased to exist by virtue of the college's bankruptcy and the subsequent sale of its assets, and that the Gage Trustee was no longer obligated to disburse trust moneys to Bennett College. Notice of the proceeding was served on Bennett College through the college's last president, J.W. Nystrom, the bankruptcy trustee for Bennett College (the Bankruptcy Trustee), and the New York Attorney General.[5]

In July 1979, the Gage Trustee, the Bankruptcy Trustee, and apparently the New York Attorney General entered into a stipulation by which the Gage Trustee agreed to pay $3,668.22 to the Bankruptcy Trustee.[6] The amount represented the net moneys that were payable to Bennett College but had not been paid because of the Gage Trustee's concern over whether the college continued to exist as required by the Gage trust. Also in July 1979, the Supreme Court of New York issued a memorandum decision finding that Bennett College had "ceased to exist" and permitting the Gage Trustee to substitute other beneficiaries to the Gage trust in accordance with the trust's terms.

In September 1979, the Supreme Court of New York approved the July 1979 stipulation, and, after referring to its July 1979 memorandum decision, "ORDERED, ADJUDGED AND DECREED that Bennett College ... has for the purposes of [the Gage] Trust ceased to exist."

## II.

The Colleges argue that the court of appeals and probate court erroneously applied the doctrine of collateral estoppel in this case. We disagree.

Collateral estoppel, or issue preclusion, bars relitigation of an issue that was determined at a prior proceeding if: (1) the issue precluded is identical to an issue actually determined in the prior proceeding; (2) the party against whom estoppel is sought was a party to or was in privity with a party to a prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *E.g., City of Colorado Springs v. Industrial Comm'n,* 749 P.2d 412, 414 (Colo.1988); *Industrial Comm'n v. Moffat County School Dist. RE No. 1,* 732 P.2d 616, 619–20 (Colo.1987); *United States v. Jesse,* 744 P.2d 491, 503–04 (Colo.1987). The issue on which preclusion is asserted must have been actually litigated and necessarily adjudicated in the prior proceeding. *Jesse,* 744 P.2d at 503.

### A.

We first consider whether the issue of Bennett College's existence that was decided in the New York proceeding is identical to the issue before the Denver Probate Court.

**4.** Although Gage named Bennett School and Bennett Junior College, Bennett College's predecessors, as the trust beneficiaries, we refer to the school and junior college as "Bennett College." The parties do not dispute that Bennett College is not in privity with Bennett School and Bennett Junior College.

**5.** Under New York law, in certain charitable trust proceedings the attorney general is

deemed to be the representative of the state of New York and charitable trust beneficiaries, and notice of such trust proceedings must be served on the attorney general. N.Y.Est. Powers & Trusts Law § 8–1.1(g)–(h) (McKinney 1967); 1971 N.Y. Laws 2641–42.

**6.** The trust corpus in 1979 was worth $465,-983.37.

The Gage trust provided that another charitable beneficiary could be named "[i]n the event that [Bennett College] cease[s] to exist, whether by reason of dissolution, merger, consolidation or otherwise." In its "Petition for Voluntary Accounting and Construction of Deed of Trust," the Gage Trustee specifically requested that the New York Supreme Court determine "for purposes of the administration of said trust [that] Bennett College ... ceased to exist on or about August 8, 1977."

The Collbran trust provided that upon Collbran's death the trust would be "divided into equal parts and distributed outright to the [named] organizations that are in existence" at the time of her death. In its "Petition for Order Ascertaining Beneficiaries of Trust," the Collbran Trustee stated that the Charities had requested distribution of the trust corpus to the Charities only, because Bennett College was not in existence at the time of Collbran's death. The Collbran Trustee also stated in the petition that it was "uncertain" whether it was required to distribute a one-fourth share to Bennett College because, *inter alia,* the Gage Trustee had learned that Bennett College had been adjudicated a bankrupt, that the college had not conducted classes or functioned as an academic institution since fall 1977, and that in the Gage trust court proceedings the New York Supreme Court had found that, for purposes of the Gage Trust, the college had ceased to exist. The Collbran Trustee requested through the petition that the Denver Probate Court determine the beneficiaries of the trust and instruct the Collbran Trustee on how to distribute the trust assets to the beneficiaries.

The Colleges argue that the issues in the two court proceedings are different because "[e]ach trust is unique, which requires that each be examined independently." Specifically, the Colleges argue that the issue in the Gage trust court proceeding must have involved a different issue because the document creating the Gage trust defined cessation of existence as "dissolution, merger, consolidation or otherwise," and the document governing the Collbran trust does not define "existence." We disagree.

A comparison of the facts in the Gage trust court proceedings and the court proceedings in this case demonstrates that the issue before the New York Supreme Court was identical to the issue before the Denver Probate Court: whether or not Bennett College was in existence. The Gage trust deed's definition of "exist" did not cause the issue in the New York court proceedings to be different from the issue before the Denver Probate Court. The deed's definition of "exist"—"dissolution, merger, consolidation or otherwise"—is too broad to differentiate the Gage trust deed's use of "exist" from the Collbran trust instrument's use of "existence." *Cf. Webster's Third International Dictionary* 796 (1986) ("exist" means "to have actual or real being" or to "have being in space and time").

### B.

The Charities argue, and the probate court and court of appeals held, that the Colleges were in privity with Bennett College's bankruptcy trustee during the 1977–1978 bankruptcy proceedings of the college. We agree.

■ For purposes of collateral estoppel, a privy is one who, after rendition of judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by successor, inheritance, or purchase. *See Murphy v. Northern Colorado Grain Co.,* 30 Colo.App. 21, 24, 488 P.2d 103, 104 (1971) (citing *Bernhard v. Bank of America Nat'l Trust & Sav. Ass'n,* 19 Cal.2d 807, 810, 122 P.2d 892, 894 (1942)), *cited with approval in Pomeroy v. Waitkus,* 183 Colo. 344, 350, 517 P.2d 396, 399 (1973).

The bankruptcy trustee is considered to be the successor in interest to the debtor and the debtor's property during the bankruptcy proceeding, 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 419[3.–1], at 634 (2d ed.1988) [hereinafter 1B *Moore's Federal Practice* ], to collect, liquidate, and ultimately distribute the trustee's estate to the creditors. Bank-

ruptcy Act of 1898, ch. 541, 30 Stat. 544, 557 [hereinafter Bankruptcy. Act] (1978 repeal effective 1979), *1979 version reprinted in* 11 U.S.C.A.App. at 141, 180–81 (West 1979) (current version at 11 U.S.C. §§ 101 to 1330 (1979 and Supp.1990)).[7] Although under the Bankruptcy Act a trustee is considered a representative of the creditors, the trustee for many purposes is deemed to be in privity with the debtor and stands in the debtor's shoes. 2 D. Cowans, *Bankruptcy Law and Practice* § 604 (2d ed. 1978); *accord In re Ahead By A Length, Inc.,* 100 B.R. 157, 173 (Bankr.S.D.N.Y. 1989); *see also Heiser v. Woodruff,* 327 U.S. 726, 734, 66 S.Ct. 853, 857, 90 L.Ed. 970 (1946) (holding that issue of fraud litigated between creditor and bankrupt, and litigated between creditor and bankruptcy trustee, "who represents the bankrupt and [the bankrupt's] creditors," is res judicata and cannot be further litigated in the bankruptcy proceeding); 4 *Collier on Bankruptcy* ¶ 704.02 n. 2 (L. King 15th ed. 1979) ("Rights of action arising upon the contracts or property of the debtor, not yet resolved into suit, pass to the trustee, and [the trustee] should assert them in the proper tribunal whenever necessary for the collection or preservation of the estate.") (citing *In re Bowling Green Milling Co.,* 36 F.Supp. 785, 786 (W.D.Ky.1941)).[8]

For purposes of the application of collateral estoppel on the issue of whether Bennett College was in existence at the time of Collbran's death, we conclude that the Bankruptcy Trustee was a privy to Bennett College.

## C.

The Colleges argue that the third requirement for the application of collateral estoppel—final judgment on the merits in the prior proceeding—cannot be satisfied in this case, because the issue of Bennett College's existence was not actually and necessarily decided by the New York Supreme Court in the Gage trust court proceedings because the parties reached a settlement.

Under certain circumstances a stipulation between parties to central questions of fact and law or a stipulation to questions of fact may render a judgment not "final" as to those questions, and in a subsequent proceeding collateral estoppel should not prevent the litigation of those questions unless the parties in the original lawsuit intended the questions to be settled as to future actions. *See* Restatement (Second) Judgments § 27 comment e (1980); 1B *Moore's Federal Practice* ¶ 0.444[4].

In this case, the "stipulated fact" doctrine is inapplicable. Because the trustee for the Gage trust placed in issue—through its petition for accounting and construction of deed of trust—Bennett College's existence, and because the issue of the college's existence was crucial to the trustee's decision on how it would disburse the trust corpus, the New York Supreme Court could not avoid entering an order deciding the issue.

The question, then, is whether the parties to the Gage trust proceedings reached a stipulation of fact on the question of Bennett College's existence. We conclude that the parties did not reach such a stipulation. The New York Supreme Court order indicates that the parties to the Gage trust proceedings stipulated only to the amount owed and payable to Bennett College during the period from September 6, 1977, to October 14, 1977.[9] Additional evi-

---

7. The Bennett College bankruptcy proceedings, initiated in May 1977, were governed by the Bankruptcy Act. *See* Bankruptcy Reform Act of 1978, Pub.L. 95–598, § 403(a), 92 Stat. 2549, 2683 (1978).

8. To the extent that they are relevant to this case, the cases cited by the Colleges are consistent with our recognition that the Bankruptcy Trustee was in privity with Bennett College, the debtor in bankruptcy, in the Gage trust court proceedings. For example, *DePinto v. United States,* 407 F.Supp. 5, 7 (D.Ariz.1976), *aff'd,* 585 F.2d 405 (9th Cir.1978), states that a bankruptcy trustee has a "duty to represent the creditors and to realize the maximum profit on the bankruptcy estate."

9. The trustee suspended trust payments to Bennett College on September 6, 1977, because of concerns about whether the college continued to exist, as the Gage trust deed required. Bennett College was adjudicated bankrupt on October 14, 1977.

dence indicating that the parties had not reached a stipulation on the question of Bennett College's existence is that the parties' July 13, 1979, stipulation was preceded by the New York Supreme Court's July 2, 1979, "Memorandum Decision," which provided in relevant part:

> Upon the foregoing papers there being no objection, this application to settle trustee's account and for a construction granting petitioner permission to substitute as beneficiary in place and stead of Bennett College, *which has ceased to exist*, ... one or more ... organizations ... is granted.

(Emphasis supplied). The New York court's "Final Judgment on Intermediate Accounting" incorporated the Memorandum Decision, and "ORDERED, ADJUDGED AND DECREED that Bennett College ... has for the purposes of said Trust ceased to exist."

We hold that the 1979 stipulation does not prevent the application of collateral estoppel to the issue of Bennett College's existence.

#### D.

The Colleges' final argument is that they were deprived of a full and fair opportunity to litigate Bennett College's existence in the Gage trust proceeding.[10] We disagree.

As we have stated, the Bankruptcy Trustee was in privity with Bennett College, and the Bankruptcy Trustee is under a fiduciary duty to preserve the debtor's estate. *See* 2 D. Cowans, *supra* p. 11, § 604; *see also* 4 *Collier on Bankruptcy, supra* p. 11, ¶ 704.02 n. 2. Thus the issue we must resolve is whether the Bankruptcy Trustee was given a full and fair opportunity to litigate the issue of Bennett College's existence in the Gage trust proceeding.

Factors determinative of whether a party has been given full and fair opportunity to litigate include whether the remedies and procedures in the first proceeding, or the proceeding itself, is substantially different from the proceeding in which collateral estoppel is asserted, *see Salida School Dist. R–32–J v. Morrison,* 732 P.2d 1160, 1164 (Colo.1987); whether the party in privity in the first proceeding has sufficient incentive to vigorously assert or defend the position of the party against which collateral estoppel is asserted, *see id.;* and the extent to which the issues are identical, 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4423, at 221 (1981). *See generally* Wright, Miller & Cooper, *supra,* § 4423.

Applying these factors, we can find nothing in the record suggesting that the Colleges were denied a full and fair opportunity to litigate through the Bankruptcy Trustee. The New York Supreme Court proceedings were substantially similar, and the Colleges have not argued that the New York trial procedures are substantially different from Colorado's trial procedures. With more than $465,000 at stake in the trust corpus, we conclude that the Bankruptcy Trustee, who was obligated to preserve Bennett's College's assets, had adequate incentives to assert in the New York court the existence of Bennett College. Finally, the issue in the Gage trust proceedings and the issue in the Collbran trust proceedings were identical.

#### III.

We hold that the probate court and court of appeals properly applied the doctrine of collateral estoppel on the issue of Bennett College's existence.

Judgment affirmed.

Justice LOHR dissents, and Justice KIRSHBAUM joins in the dissent.

Justice LOHR dissenting:

This case involves the distribution of funds pursuant to a trust established by

---

**10.** We note that, as the Colleges acknowledge, Bennett College was served with notice that the New York Supreme Court had issued an order to show cause directing Bennett College, and the other parties interested in the Gage trust, to appear before the court to show cause why the court should not make a determination of whether Bennett College had ceased to exist. However, no personal representative from the college appeared at the proceeding to show cause.

Margaret Collbran in 1970. Under the terms of the trust, upon Collbran's death the remainder was to be divided equally and distributed to "the following organizations that are in existence at the time of [Collbran's] death": St. John's Episcopal Cathedral, Dumb Friends League Animal Shelter, Metropolitan Opera Guild, Inc., and Bennett College, Collbran's alma mater.

On October 14, 1977, Bennett College was adjudicated bankrupt. During the several months that followed, most of Bennett College's assets were liquidated and the proceeds distributed to its creditors. Pace University subsequently assumed many of Bennett College's administrative obligations, including administering student loans and scholarship funds, maintaining Bennett College records and raising funds for the Bennett College Foundation. Pace accepted all of the Bennett College students and hired many of the faculty and staff formerly employed by Bennett. Pace also allowed Bennett's alumnae office to operate on its grounds. The Bennett College charter was never relinquished or revoked, and in 1986 Bennett College and Pace University were formally consolidated by the New York State Board of Regents.

Collbran died on February 22, 1986. The trustee petitioned the Denver Probate Court for instructions regarding Bennett College's interest in the trust. The share at issue is valued at more than $7,000,000. The other three trust beneficiaries contended that Bennett College was no longer in existence. The three beneficiaries filed two motions for summary judgment seeking dismissal of the claim of Bennett College, Bennett College Foundation, Inc. and Pace University (referred to collectively as Bennett) to be beneficiaries of the Collbran trust. The moving parties contended that Bennett was both collaterally and judicially estopped from asserting that Bennett College was in existence at the time of Collbran's death. The Denver Probate Court granted the motions for summary judgment and the Colorado Court of Appeals affirmed. The majority affirms the judgment of the court of appeals on the ground of collateral estoppel. I do not agree that collateral estoppel is applicable in this case.

The court of appeals held that Bennett was collaterally estopped from litigating the issue of Bennett College's existence by the Gage Trust litigation, which occurred before a New York Supreme Court, a trial court. Margaret Gage created a trust with Bennett College named as the beneficiary. The Gage Trust provided in pertinent part:

In the event that the beneficiary hereinabove named shall at any time cease to exist, whether by reason of dissolution, merger, consolidation or otherwise, I reserve to myself during my lifetime, and to my trustees after my decease, the right and privilege of substituting as beneficiary in the place and stead of the beneficiary hereinabove named, one or more religious, charitable, eleemosynary, educational or benevolent organizations or institutions wholly charitable in nature and purpose and not operated for profit.

In May 1979, the trustee of the Gage Trust filed an action in a Supreme Court of New York, seeking a ruling that Bennett College had ceased to exist, that the trustee need not continue disbursing trust funds to Bennett College and that the trustee could substitute a new beneficiary for Bennett College. The trial court issued an order to show cause why Bennett College had not ceased to exist. On July 2, 1979, the trial court issued a memorandum opinion granting the Gage trustee's application to construe the trust to permit the trustee to substitute a new beneficiary for Bennett College, "which has ceased to exist." On July 13, 1979, the trustee and the Bennett College bankruptcy trustee entered into a stipulation in which they agreed that Bennett College's claim against the Gage Trust would be fully satisfied by a payment of $3,668.22, the amount of income accrued up to the date on which Bennett College was adjudicated bankrupt. On September 7, 1979, the court entered its final judgment, which repeated the rulings found in the memorandum decision and referred to the parties' stipulation.

In order for the litigation of any issue to be barred by collateral estoppel, four conditions must be met: (1) the issue for which litigation is precluded must be identical to an issue actually determined in a prior pro-

ceeding; (2) the party against whom preclusion is sought must have been a party to, or in privity with a party to, the prior proceeding; (3) there must have been a final judgment on the merits in the prior proceeding; and (4) the party against whom preclusion is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *City of Colorado Springs v. Industrial Commission*, 749 P.2d 412, 414 (Colo.1988).

The first requirement, identity of issue, is not present in this case. In order for collateral estoppel to apply, "the same identical matter must have been in issue in the former suit, and the precise fact determined by the former judgment." *Hickey v. Anheuser–Busch Brewing Assoc.*, 36 Colo. 386, 389, 85 P. 838, 838 (1906).

The Gage Trust specified that the beneficiary, Bennett College, could "cease to exist" by such means as "dissolution, merger, consolidation or otherwise." Under this expansive definition, the New York court found that after the sale of Bennett College's assets and its subsequent consolidation with Pace University, Bennett College had ceased to exist.

The Collbran Trust, however, contains no definition of the term "existence." It merely states that in order to benefit from the trust, Bennett College must have been "in existence" at the time of Collbran's death. The meaning of the term "existence" in this context is not self-evident but is ambiguous. *Cf. Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1314 (Colo.1984) (whether an ambiguity exists is a question of law). Extrinsic evidence should be admissible, therefore, to determine its meaning. *See, e.g., id.* After a trial, a court might find that Collbran intended to leave money to Bennett only if it continued to operate as it had when she was a student. On the other hand, a court might determine that Collbran merely wanted to leave a portion of her estate to an educational institution that was closely tied with her alma mater by corporate consolidation. Whatever a trial court might find, it is evident that the resolution of whether Bennett College is in existence for purposes of the Collbran trust is not controlled by the New York court's determination that it was not in existence under the definition controlling in the Gage Trust litigation. *See Blue Cross of Western New York v. Bukulmez*, 736 P.2d 834, 839 (Colo. 1987) ("[s]ummary judgment should not be granted where there appears to be any controversy concerning material facts").

The majority reasons that the Gage Trust's "definition of 'exist'—'dissolution, merger, consolidation or otherwise'—is too broad to differentiate the Gage trust deed's use of 'exist' from the Collbran trust instrument's use of 'existence.'" *Maj. op.* at 367. This reasoning misconstrues the terms of the Gage Trust. The Gage Trust does not define "exist" broadly. It defines the phrase "cease to exist" broadly and, therefore, by necessary implication defines "exist" very narrowly. The Collbran Trust does not define existence and it remains a disputed issue of material fact whether Collbran intended to employ the narrow concept of existence used in the Gage Trust.

Accordingly, I would reverse the court of appeals' judgment that litigation regarding the issue of Bennett College's existence was barred by collateral estoppel.

Justice KIRSHBAUM joins in this dissent.