**MARYLAND CASUALTY COMPANY,**
**Petitioner,**

v.

**Rose Wood MESSINA, Respondent.**

**No. 93SC172.**

Supreme Court of Colorado,
En Banc.

May 16, 1994.

Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the decision by the court of appeals in *Maryland Casualty Co. v. Messina*, 860 P.2d 556 (Colo. App.1993), reversing the district court's entry of summary judgment. The district court decided that the claimant, Rose Wood Messina (Messina), was collaterally estopped from raising two issues in a civil action for personal injury protection benefits under the Auto Accident Reparations Act (the "no-fault" law) against Maryland Casualty Company (Maryland Casualty), the insurer of the vehicle that Messina was driving. The court of appeals held that the administrative law judge's findings of fact entered in a workers' compensation hearing did not estop Messina from litigating the two additional issues in her subsequent civil action for no fault. We affirm.

## I.

Messina was employed by Traffic Control West as a traffic control supervisor[1] near Ridgway, Colorado. On October 17, 1988, Messina attended a social gathering after work in Ouray, Colorado, where she consumed about five alcoholic drinks.[2] After leaving the restaurant, Messina was involved in a one-car accident on Colorado Highway 550 at approximately 11:30 p.m.[3] Messina testified that the accident occurred when she swerved to avoid a deer and drove off the highway, causing the truck to roll over. At the time of the accident, Messina had been driving a truck owned by her employer and insured by Maryland Casualty. Her blood alcohol content was taken several hours after the accident and measured .115 grams of alcohol per 100 milliliters of blood. Messina was thereafter charged with, and convicted of, driving under the influence of alcohol.

Messina suffered serious injuries as a result of the car accident. She later filed a

White and Steele, P.C., John M. Lebsack and Michael J. Daugherty, Denver, for petitioner.

Ozer, Sokolow & Ruppert, P.C., Rick Paul Lopez, Colorado Springs, for respondent.

1. Messina's duties as a traffic control supervisor included setting up flags, recording daily traffic events, supervising flaggers, and sending daily reports, logs, and record-keeping to her supervisor.

2. On cross-examination, Messina testified that this social gathering, consisting of a dinner with friends, was neither a meeting scheduled by her supervisor at which her attendance was required nor a function which her supervisor required her to attend as part of her employment.

3. Messina testified that she was returning to the work site to perform additional paperwork.

claim for workers' compensation benefits. At the workers' compensation hearing before an administrative law judge (ALJ) in October 1989, Messina testified that Traffic Control West provided her with a motor vehicle to use on the job-site and during working hours only.[4] The ALJ made extensive findings of facts which included the following:

1) Messina had permission to use the car to travel to and from work to her home in Pueblo, to monitor daily on-the-job activities, and to perform work related jobs;

2) Messina was prohibited from using the car for personal use after working hours such as social gatherings involving alcohol;

3) Messina's supervisor had repeatedly warned her that drinking and driving was not allowed with company vehicles and that she was not to use the company vehicle for "partying" after work;

4) At the end of work, on the date of the accident, Messina returned to her temporary residence, then drove to Ouray to eat dinner with friends at which time she drank four or five alcoholic beverages;

5) Neither the drive to Ouray nor the dinner with friends was a requirement of Messina's employment nor did her employer receive any benefit from her attendance at this social gathering.

Based upon these findings of facts, the ALJ denied her claim for workers' compensation benefits, concluding that Messina had failed to sustain her burden of proving the accident occurred within the course and scope of employment. The ALJ further concluded that Messina was not authorized to use the company motor vehicle "for purposes of that social gathering." The Industrial Claim Appeals Panel affirmed the ALJ's order.

Subsequently, Messina brought a civil action in district court seeking personal injury protection (PIP) benefits from Maryland Casualty. Maryland Casualty filed a declaratory judgment action seeking a judicial determination of its rights and obligations to pay PIP benefits to Messina under Traffic Control West's automobile insurance policy. Maryland Casualty asserted that: (1) Messina was not a "permissive user" of the vehicle at the time of the accident; and (2) by using Traffic Control West's vehicle without a good faith belief that she was legally entitled to do so, Messina became a "converter," and therefore was not entitled to PIP benefits.[5]

Maryland Casualty filed a motion for summary judgment asserting that the doctrine of collateral estoppel barred Messina from relitigating the issue of authorization which was considered by the ALJ in Messina's workers' compensation case. Maryland Casualty asserted that the issue of authorization was identical to the issues of Messina's status as a permissive user and her status as a converter in determining her entitlement to PIP benefits in her civil action.

The district court ruled that, because the ALJ had determined that Messina was using the motor vehicle outside the scope of her employment, Messina lacked permission to use the vehicle and did not have a good faith belief that she had such authorization. The district court therefore entered summary judgment in favor of Maryland Casualty.

The court of appeals reversed the district court's entry of summary judgment. The court of appeals determined that, because the factual issues in the workers' compensation

---

4. Messina received permission to use the company car in certain capacities that went beyond several of the restrictions provided in Traffic Control West's employment handbook. For example, Messina was additionally entitled to use the company vehicle for transportation to and from work from her residence and for use on the job-site during working hours. JoAnne Pacheco, the owner and general manager of Traffic Control West, testified that Messina was not authorized to use the car for personal use after working hours for non-job-related activities, such as social gatherings involving the ingestion of alcohol. This restriction was placed on Messina

since Pacheco knew of Messina's propensity to "party" and that Messina had been previously charged with an alcohol-related driving infraction.

5. *Restatement (Second) of Torts* § 222 A (1965) defines conversion as

an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.

proceeding were not identical to the issues presented in this action,[6] the doctrine of collateral estoppel did not preclude the district court's consideration of Messina's claims.

Because the issues determined adversely to Messina in the earlier workers' compensation proceeding are not identical to the issues presented in this civil action, we hold that the doctrine of collateral estoppel does not preclude the district court from considering Messina's claims.

## II.

■ We granted certiorari to review whether, under the doctrine of collateral estoppel, the factual issue determined in a workers' compensation proceeding—that the claimant was acting outside the course and scope of her employment at the time of the automobile accident—bars a determination of the claimant's entitlement to PIP benefits under the Colorado Auto Accident Reparations Act.

■ Collateral estoppel, or issue preclusion, bars relitigation of an issue determined in a prior proceeding if:

1) the issue precluded is identical to an issue actually determined in the prior proceeding; and

2) the party against whom estoppel is asserted has been a party to or in privity with a party in the prior proceeding; and

3) there is a final judgment on the merits in the prior proceeding; and

4) the party against whom the doctrine is asserted has had a full and fair opportunity to litigate the issue in the prior proceeding.

*See Bennett College v. United Bank of Denver,* 799 P.2d 364, 366 (1990); *City of Colorado Springs v. Industrial Comm'n,* 749 P.2d 412 (Colo.1988); *Salida School Dist. R–32–J v. Morrison,* 732 P.2d 1160 (Colo.1987); *Pomeroy v. Waitkus,* 183 Colo. 344, 517 P.2d 396, 399 (1973). The findings of fact and conclusions of law of an administrative agency, acting in a judicial capacity, may be binding on the parties in a subsequent proceeding if the agency resolved disputed issues of fact which the parties had an adequate opportunity to litigate. *Industrial Comm'n v. Moffat County Sch. Dist. RE No. 1,* 732 P.2d 616 (Colo.1987).

The only elements at issue here are the first, that is, whether the issues have been litigated and necessarily adjudicated so that they are identical to the issue determined in the prior proceeding, and the fourth, that is, whether the estopped party has had a full and fair opportunity to litigate the issues in the prior proceeding.[7] We note that the requirements of the other two elements of collateral estoppel have wholly been met and are not in controversy. The second element is satisfied since Messina was a party in the workers' compensation proceeding and she is a party here. As to the third element, the ALJ's order was appealed to the Industrial Claim Appeals Panel, and there was a final determination by an administrative agency. Consequently, the third requirement of a final judgment on the merits is met.

Further, the *Restatement (Second) of Judgments* § 27 cmt. h (1982) also provides insight concerning issue preclusion:

---

**6.** The court of appeals noted that the issue in the workers' compensation proceeding was whether Messina was performing services arising out of and in the course of her employment at the time of her injury. In contrast, the issues presented in Messina's civil action for PIP benefits, as the court of appeals indicated, were whether Messina had her employer's permission to use the vehicle at the time of the accident, or if not, whether she had a good faith belief that she was entitled to use or operate the vehicle. The court of appeals deemed Messina's authorization to use the vehicle after work as not being a necessary determination in the workers' compensation proceeding.

**7.** In reversing the entry of summary judgment, the court of appeals focused on the first element and determined that collateral estoppel did not apply. The court of appeals held that the factual issues in the workers' compensation proceeding are not identical to the issues involved in this case. Although our discussion is limited to the first element, we additionally note that Messina did not have a full and fair opportunity to litigate in the workers' compensation proceeding the issues in her PIP benefits case of whether she was a converter without a good faith belief that she was legally entitled to use the vehicle and whether Messina was a permissive user of the vehicle at the time of the accident.

If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made.

Section 28(3) of the *Restatement (Second) of Judgments* (1982) states that relitigation of an issue in a subsequent action is not precluded when a "new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts."

Maryland Casualty maintains that the scope of employment question answered in the workers' compensation proceeding, the no-fault question of permissive use, and the no-fault question of conversion in the civil action for PIP benefits all share the common thread of a determination on authorization. Before the ALJ could have denied Messina workers' compensation benefits, Maryland Casualty contends, the ALJ needed to find that Messina's use of the vehicle was unauthorized, and outside the course and scope of her employment. Maryland Casualty further argues that the ALJ's finding that Messina's use of the vehicle was unauthorized is identical to a finding in her civil action for PIP benefits that she was not a permissive user of the vehicle at the time of the accident. Maryland Casualty concedes that the ALJ made no explicit finding about whether Messina possessed a good faith belief that she was entitled to use the motor vehicle in the capacity she did at the time of the accident. Rather, Maryland Casualty emphasizes that the ALJ's findings show that Messina knew she was not authorized to use the car for personal use after working hours and therefore an inference is created that she did not have a good faith belief that she was entitled to use the vehicle. Finally, Maryland Casualty alleges that the court of

appeals failed to appreciate the implications of the travel status rule.[8] Maryland Casualty maintains that, when an employee falls within the travel status rule of continuous workers' compensation coverage, as is the case here, the question of permissive use must necessarily be addressed in order to determine whether Messina's post-work accident met the test of a "distinct departure on a personal errand." We do not address Maryland Casualty's contention that Messina fell within the travel status rule since this is not at issue here.

Messina asserts that the factual issues critical to determining entitlement to PIP benefits in the civil action were not previously determined in the workers' compensation hearing. She argues that whether she was authorized to use the vehicle at the time of her injury was not fundamental to the ALJ's decision that the accident occurred outside the course and scope of Messina's employment and the ALJ's ultimate conclusion that the workers' compensation claim should be denied. Rather, Messina contends that, in denying her claim for workers' compensation benefits, it was sufficient that the ALJ found that neither the drive to Ouray nor the social dinner with her friends was within the scope of Messina's employment.

The court of appeals determined that the issues in the ALJ's workers' compensation proceeding and the precluded civil action for PIP benefits are not identical. We agree.

### III.

In determining whether Messina was entitled to workers' compensation benefits, the issue was whether her injuries arose out of and in the course of her employment.

Section 8–52–102 of the Workers' Compensation Act establishes the conditions of recovery and provides:

(1) The right to the compensation provided for in articles 40 to 54 of this title, in

8. The travel status rule, or the travelling employee doctrine, as distinguished from simply going to and from work, imposes continuous workers' compensation coverage from the time the employee leaves her home until the time the employee returns home. *Silver Eng'g Works, Inc. v. Simmons*, 180 Colo. 309, 311, 505 P.2d 966, 968

(1973). In *Silver Engineering Works*, this court presented an exception to this rule where the traveller departs on a personal errand "and thereby los[es] the right to compensation benefits from accidents occurring during such departures." *Id.*

lieu of any other liability to any person for any personal injury or death resulting therefrom, shall obtain in all cases where the following conditions occur:

. . . .

(b) where at the time of the injury, the employee is performing service *arising out of and in the course of his employment*.

§ 8–52–102(1)(b), 3B C.R.S. (1986) (emphasis added).[9]

■ The Workers' Compensation Act establishes an administrative process designed to adjudicate promptly a narrow issue of law containing limited legal questions, and creates a just remedy of compensating workers for employment related injuries. *Public Serv. Co. v. United Cable Television of Jeffco, Inc.*, 816 P.2d 289 (Colo.App.1991). The hearing in which a workers' compensation claim is adjudicated is generally informal and expeditious.

■ In a workers' compensation proceeding, an injured claimant is compensated if a sufficient nexus exists between the employment and the injury. *Ramsdell v. Horn*, 781 P.2d 150 (Colo.App.1989); *In Re Question Submitted by United States Court of Appeals*, 759 P.2d 17 (Colo.1988). The determination of whether an injury occurred while an employee is performing services arising out of and in the course of employment depends on an examination of the totality of the circumstances. *Younger v. City and County of Denver*, 810 P.2d 647 (Colo.1991). In order to determine this issue, this court has identified several variables. These variables include:

"Whether the activity occurred during working hours; whether it was on or off the employer's premises;" . . . [whether] the . . . activity was contemplated by the employment contract; . . . and [whether] . . . the obligations of employment "cre-

ate[d] the 'zone of special danger' out of which the injury arose."

*Dorsch v. Industrial Comm'n*, 33 Colo.App. 168, 518 P.2d 954 (1973) (quoting *City and County of Denver v. Lee*, 168 Colo. 208, 213, 450 P.2d 352, 355 (1969); *O'Leary v. Brown–Pacific–Maxon, Inc.*, 340 U.S. 504, 507, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951)) (citations omitted). An employee's actions are deemed to be within the scope of employment when an employee directly participates in activities assigned or directed by the employer. If an employee's travel is at the express or implied request of the employer, then the travel is within the scope of employment. *Varsity Contractors and Home Ins. Co. v. Baca*, 709 P.2d 55 (Colo.App.1985). Further, if an employer provides transportation to its employee or pays the employee's cost of commuting to and from work, then the scope of employment broadens to include the employee's transportation. *Loffland Brothers v. Baca*, 651 P.2d 431 (Colo.App.1982).

The ALJ made a number of factual findings and relied on the evidence to reach the conclusion that Messina had failed to sustain her burden of proving that, at the time of the accident and injury, she was engaged in activities arising out of and in the course of her employment.

[Messina] left her employment that [day] at 6:00 p.m. and there were no work-related scheduled meetings, she was not running a special errand on behalf of the employer, her attendance to any social occasion was not required as part of her work-related performance, she was not authorized to use the company vehicle for purposes of that social gathering, and, in fact, violated a company policy in regard to unauthorized use of a company vehicle, and using the company vehicle at a time when she had been drinking alcoholic beverages.

The relevant inquiry before the ALJ was whether the claimant's injury arose out of

9. Effective July 1, 1990, the legislature repealed and reenacted portions of the "Workmen's Compensation Act" and re-named it the "Workers' Compensation Act of Colorado." *See* Act approved March 13, 1990, ch. 62. secs. 1–79, 1990 Colo. Sess. Laws 468. Messina's accident occurred October 17, 1988, and the workers' compensation hearing occurred in October 1989

while the former provisions still applied. Section 8–41–301, 3B C.R.S. (1993 Supp.), is substantially similar to the former § 8–52–102, 3B C.R.S. (1986). Citations herein will refer to the former provisions, although we cite to the relevant statutes as the renamed Workers' Compensation Act.

and in the course of her employment. The ALJ's inquiry was limited to assessing the factual allegations underlying the workers' compensation claim. In making this determination, the ALJ did not make specific factual findings or conclusions concerning several factors critical to a lawsuit for PIP benefits. For example, the ALJ made no factual determination as to whether Messina's taking the company car for personal use that night interfered with her employer's ownership rights to constitute an act of conversion. Further, the personal injury protection insurance policy issued by Maryland Casualty was not introduced nor evaluated at the workers' compensation hearing, whereas this policy is a critical piece of evidence in Messina's civil action for PIP benefits.

The ALJ had no reason to resolve Messina's entitlement to PIP benefits since this was not in issue in her workers' compensation proceedings. Our review of the evidence leads us to conclude that the findings were narrowly tailored to establish whether Messina's injuries occurred while performing services arising out of and in the course of her employment. The ALJ made no findings of fact as to whether her using the company car for a social gathering involving drinking merely constituted a violation of Traffic Control West's automobile policy or whether this act sufficiently rose to the level to constitute conversion. Further, the workers' compensation case was not a final adjudication as to Messina's claim to PIP benefits nor does an ALJ presiding over a workers' compensation proceeding have the jurisdictional authority to decide the issue of entitlement to PIP benefits.

## IV.

According to Maryland Casualty, the ALJ's determination that Messina's use of the vehicle was unauthorized is identical to a finding that she did not have permission to use the car and consequently disqualifies her from entitlement to PIP benefits. Maryland

Casualty additionally acknowledges that the ALJ made no direct finding regarding Messina's status as a converter. However, Maryland Casualty avers that the ALJ's findings show that Messina knew she was not authorized to use the car for personal use after working hours and therefore by implication Messina lacked a good faith belief about her permission to use the car.

Messina asserts that the issues of whether she had a good faith belief that she had permission to use the vehicle for this social gathering and whether her drinking and driving interfered with Traffic Control West's ownership rights to the car were neither considered nor were they a necessary determination in her workers' compensation proceeding.

The Colorado Auto Accident Reparations Act, §§ 10–4–701 to –723, 4A C.R.S. (1987 & 1993 Supp.), governs the rights and liabilities of the insurer for personal injuries resulting from automobile accidents. The statutorily mandated minimum insurance coverage required by owners of motor vehicles includes personal injury protection benefits for medical expenses. In the event of an accident, the no-fault insurer pays PIP benefits directly to the persons covered by the policy,[10] regardless of fault.

The statutory classification of persons to whom this coverage must extend is codified at section 10–4–703(6), 4A C.R.S. (1987), which provides:

> "Insured" means the named insured, relatives of the named insured who reside in the same household as the named insured, or *any person using the described motor vehicle with the permission of the named insured.*

(Emphasis added.)

Further, section 10–4–712(2), 4A C.R.S. (1987), limits the coverage extended in section 10–4–703(6) and excludes injuries resulting from intentional acts or where the injured person "is operating a motor vehicle as a converter without a good faith belief that

---

**10.** Under § 10–4–707(1), 4A C.R.S. (1987), a person is covered under PIP benefits for:

(c) Accidental bodily injury arising out of accidents occurring within this state sustained by any other person while occupying the de-

scribed motor vehicle *with the consent of the insured* or while a pedestrian if injured in an accident involving the described motor vehicle. (Emphasis added.)

he is legally entitled to operate or use such vehicle." [11]

The No–Fault Act does not define converter as it is used in section 10–4–712. However, we have had an opportunity to define conversion as "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Byron v. York Inv. Co.*, 133 Colo. 418, 424, 296 P.2d 742, 745 (1956); *see also Mari v. Wagner Equip. Co.*, 721 P.2d 1208 (Colo.App.1986); *Glenn Arms Assocs. v. Century Mortgage & Inv. Corp.*, 680 P.2d 1315 (Colo.App.1984). In *People v. Wechsler*, 854 P.2d 217 (Colo.1993), we cited *Restatement (Second) of Torts* § 222 A (1965), which provides as follows:

§ 222 A. What Constitutes Conversion

(1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.

(2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:

(a) the extent and duration of the actor's exercise of dominion or control;

(b) the actor's intent to assert a right in fact inconsistent with the other's right of control;

(c) the actor's good faith;

(d) the extent and duration of the resulting interference with the other's right of control;

(e) the harm done to the chattel;

(f) the inconvenience and expense caused to the other.

"As § 222 A implies, the question of whether the actor's interference with the owner's property is serious enough to constitute a conversion of the property is usually one of degree and is a question for the finder of fact." *Wechsler*, 854 P.2d at 221 n. 2.

Further, the *Restatement (Second) of Torts* § 228 (1965) states that an act of conversion is established where a person exceeds their authorized use:

One who is authorized to make a particular use of a chattel, and uses it in a manner exceeding the authorization, is subject to liability for conversion to another whose right to control the use of the chattel is thereby seriously violated.

Comment c to section 228 states: "[T]he limits of the permitted use ordinarily are determined by the terms, express or reasonably to be implied, of the contract or other agreement between the parties, and the question becomes one of whether there is a material breach of the agreement."

Although we recognize that the factual predicates to awarding PIP benefits under sections 10–4–703(6), 10–4–707(1), and 10–4–712(2)(b) are a determination whether Messina had her employer's permission at the time of the accident or whether she was operating the car as a converter, the decision in the workers' compensation proceeding that Messina's injury did not occur while performing services arising out of and in the course of her employment is not dispositive in the no-fault action.[12] *See Industrial Comm'n v. Moffat County Sch. Dist. RE No. 1*, 732 P.2d 616, 621 (Colo.1987). The questions to be

---

**11.** The provisions contained within Maryland Casualty's insurance policy are in conformity with the statutory provisions identified. The policy stated in pertinent part:

B. WHO IS INSURED

....

3. Any other person while "occupying" a covered "auto" with your consent.

....

C. EXCLUSIONS

We will not pay Personal Injury Protection benefits for "bodily injury"

....

3. Sustained by any person:

....

b. Who is a converter while operating an "auto" without a good faith belief that he or she is legally entitled to operate or use such vehicle.

**12.** In making his factual findings, the ALJ stated:

Although some question is raised as to whether the claimant believed she had permission to drive the company vehicle for non-work related activities, the issue is resolved by the testimony of Joanne Pacheco, ... which is more credible in that regard.

Based upon this finding of fact, however, the ALJ did not ultimately conclude whether Messina possessed a good faith belief that she had permission to drive the company car. Under these circumstances, the doctrine of collateral estoppel may not be applied in a civil action for PIP

resolved in the no-fault action for PIP benefits against Maryland Casualty—namely, whether Messina had permission to use Traffic Control West's vehicle and whether Messina had a good faith belief that she could use the vehicle—requires a consideration of several factors which were not before the ALJ for consideration. For example, the personal injury protection insurance policy issued by Maryland Casualty would be particularly relevant in this action. The ALJ's finding that Messina's injuries did not occur while performing services arising out of and in the course of her employment is not identical to the issues to be addressed in Messina's no-fault action for PIP benefits under the Colorado Auto Accident Reparations Act. In light of the foregoing factors, we conclude that collateral estoppel does not bar Messina's subsequent no-fault action.[13]

## V.

Because the identity of issues necessary to invoke collateral estoppel is absent between the issues actually and necessarily decided by the ALJ and those necessary to determine PIP benefits in a state court action, the findings of the district court in this case are insufficient to support summary judgment against Messina's state claims. Further, because the factual findings made, remedies available, and procedures followed in order to recover PIP benefits are materially different from the findings, remedies, and procedures available in the workers' compensation action, we conclude that collateral estoppel does not apply. Accordingly, we affirm the court of appeals.

---

benefits where the issue remains unresolved whether Messina committed an act of conversion.

**13.** Our conclusion that collateral estoppel does not apply in the present case is bolstered by the similar treatment we have given to collateral estoppel arguments in unemployment compensation cases. Although we acknowledge that a workers' compensation case is procedurally and substantively different from an unemployment compensation case, we find it useful to examine why we have not given the findings in unemployment compensation cases the cloak of collateral estoppel.

In *Salida School District R–32–J v. Morrison,* 732 P.2d 1160 (Colo.1987), we held that the referee's findings in an unemployment proceeding that the teacher was discharged by the school district for her outspokenness did not operate to collaterally estop the school district from denying a retaliatory discharge claim in the teacher's subsequent 42 U.S.C. § 1983 action. We determined that collateral estoppel did not apply since

an unemployment compensation hearing is designed for the prompt adjudication of a narrow issue of law and to provide a limited remedy to unemployed workers. *See also City of Colorado Springs v. Industrial Comm'n,* 749 P.2d 412 (Colo.1988) (finding that the city manager's determination that an employee was properly discharged for unsatisfactory performance did not bar the Industrial Commission's decision that the employee was entitled to unemployment compensation. We determined that the issue of an employment policy is quite distinct from the issue of unemployment compensation); *Industrial Comm'n of Colorado v. Moffat County Sch. Dist. No. 1,* 732 P.2d 616, 620 (Colo.1987) (holding that the factual findings entered in a dismissal proceeding of a teacher for neglect of duty by the board of education were not binding on the parties in a subsequent unemployment proceeding under the doctrine of collateral estoppel. This court stated that additional factors must be considered before a teacher dismissed by the board of education may be denied unemployment benefits, and that the issues presented in the two proceedings were not identical.)