**SHELTER MUTUAL INSURANCE COMPANY, Petitioner,**

v.

**Winnie TAM, Respondent.**

**No. 90SC188.**

Supreme Court of Colorado,
En Banc.

May 20, 1991.

Rehearing Denied June 10, 1991.

Greengard, Senter, Goldfarb & Rice, Thomas S. Rice, Mark C. Overturf, Ross L. Libenson, Peter H. Doherty, Denver, for petitioner.

Moyer, Beal & Vranesic, John R. Vranesic, H. Earl Moyer, Lakewood, for respondent.

Chief Justice ROVIRA delivered the Opinion of the Court.

This is a certiorari proceeding initiated by Shelter Mutual Insurance Company (Shelter) to review the court of appeals decision in *Tam v. Shelter Mutual Insurance Co.*, 786 P.2d 501 (Colo.App.1990). The court of appeals held that the trial court erred in deducting a setoff from a damage award prior to trebling the damage award pursuant to section 10–4–708, 4A C.R.S. (1987). We disagree and accordingly reverse and remand with directions.

I

The respondent Winnie Tam was involved in an automobile accident in November 1983, and she subsequently began receiving chiropractic treatment for the injuries. Guaranty National Insurance Company (Guaranty), Tam's automobile insurer, paid for the chiropractic treatment, which by May 1985 had been reduced to one visit per week.

In August 1985, Tam was involved in a second automobile accident, and Shelter then was Tam's automobile insurer. Following the August 1985 accident Tam again began receiving chiropractic treatment three times each week. Shelter agreed to pay for chiropractic treatment in excess of one visit per week, reasoning that Tam had already been receiving, and Guaranty had been paying for, chiropractic treatment once each week prior to the second accident. In early 1986, Tam underwent a Shelter-initiated medical examination, and the examining physician informed Shelter that Tam would probably not need chiropractic care beyond three additional months. Shelter subsequently informed Tam that it would pay benefits only through June 6, 1986. Tam, however, continued to receive chiropractic treatment through October 1986.

In October 1987, Tam sued Shelter to obtain payment of $8,323.78, later reduced to $8,311.78, which represented Tam's unpaid medical expenses that Tam alleged Shelter was obligated to pay. Shelter defended in part on the ground that the chiropractic treatment following June 6, 1986, was not "reasonable and necessary." In November 1987, Guaranty paid Tam $3,957.54 in return for a release from any liability for claims arising out of the November 1983 accident.

The jury returned a verdict finding that the chiropractic treatment was reasonable and necessary, that Shelter's refusal to pay the chiropractic-treatment expenses was willful and wanton, and that Tam had incurred $14,541.78 in expenses for chiropractic treatment. The trial court subsequently granted Shelter's motion for remittitur and setoff of $6,230—thus reducing the jury award to $8,311.78—because the jury had added the amount to the award even though that amount had already been paid.

During the trial, the parties had stipulated that the jury would not be told of the amount Guaranty had paid Tam in settlement, but only that an insurance company other than Shelter had paid some of Tam's medical bills; "but [the jury was] not to take that into consideration" in assessing Tam's unpaid medical expenses because "the court will handle that." Following the trial the court determined treble damages against Shelter for willful and wanton failure to pay insurance benefits pursuant to subsection 10–4–708(1), 4A C.R.S. (1987), after deducting $3,957.54 (the amount Guaranty paid to Tam in settlement) from the damage award.

The court of appeals reversed the trial court's damage award and remanded with directions to recalculate the damage award by trebling $8,311.78 before deducting Guaranty's settlement payment to Tam. We granted certiorari to consider whether the district court properly deducted the settlement payment from the jury award before trebling damages pursuant to subsection 10–4–708(1).

## II

Tam argues [1] that the stipulation reached during the trial required that the trial court deduct the settlement amount only after the court had trebled the jury's award of damages. We disagree.

As we view the circumstances and terms of the stipulation, the trial court was correct in its construction of the stipulation, and its implementation of the stipulation by deducting the settlement amount before trebling damages pursuant to subsection 10–4–708(1). Prior to Shelter's presentation of its case-in-chief at trial, counsel for both parties and the trial judge held a conference outside the presence of the jury. Tam's attorney objected to Shelter obtaining testimony from a claims adjuster for Guaranty. In Shelter's offer of proof, Shelter stated:

[The claims adjuster] would be called to testify to the following: First, that he was the claims representative for the personal injury protection insurance carrier regarding the first accident; that his office received a demand from [Tam] for payment of some of the very same bills which are a controversy in this case; that [the claims adjuster] in fact[ ] paid a portion of those bills that are in controversy in this case in response to [Tam's] request under the personal injury protection coverages afforded by his company; and, finally, that [Tam], as a part of their discussions, represented to him that [Tam's] treating physicians were of the opinion that 25 percent of the treatment that she was receiving was properly apportionable to the first accident.

The court ruled that pursuant to C.R.E. 408 the claims adjuster would not be permitted to refer to his settlement negotiations with Tam's attorney, including the attorney's statement that 25 percent of Tam's treatment was apportionable to the November 1983 accident. The court, however, overruled Tam's attorney's objection to the claims adjuster's testimony concerning benefits that Guaranty had already paid Tam. This testimony, the court ruled, was "relevant to the jury to make a determination as to what is due and owing" under the Colorado Auto Accident Reparations Act (the

---

1. Tam also argues that any setoff from the jury's award of damages should be deducted after trebling the damages pursuant to subsection 10–4–708(1) because the jury found that Shelter willfully and wantonly refused to pay insurance benefits due her, and that deducting the settlement amount before trebling the damage award reduces the punitive and deterrent elements of the statute. Because of our resolution of the issue in this case, we have no occasion to address this argument.

Act), §§ 10–4–701 to –723, 4A C.R.S. (1987 & 1990 Supp.). Implicit in the court's ruling was that under the Act Tam was not permitted to recover benefits from one insurance company that had already been paid by another.[2]

Following the court's ruling, Tam's counsel agreed to "[t]ell the jury that 25 percent [of Tam's medical bills] ha[s] been paid." After Shelter argued that the jury should be informed that it could not award any damages against Shelter that had already been paid by Guaranty, Tam's counsel stated: "[I]t's my position that the jury should not be advised of this and it will be set off—if this is the method by which it should be handled, is that the Court should make the set-off following the jury verdict." This colloquy followed:

> [Shelter's counsel]: The only problem is, the inference for the jury is that these bills are still unpaid....
>
> ....
>
> THE COURT: We can do it two ways; we can simply tell them that 25 percent has been paid by another insurance company and therefore they're not to take that into consideration, or I can tell them that 25 percent has been paid by another insurance company, they're not to take it into consideration and, if necessary, the Court will do any set-off based on their award.
>
> ....
>
> [Tam's counsel]: May I inquire if there's a third alternative which is the jury not be advised in any manner what-

soever and the Court makes a setoff following final verdict?

> THE COURT: That would be another one, I guess. But I don't think [Shelter is] going to go for that.
>
> [L]et me say also, normally in cases where there's been a settlement with another party that either was another Defendant or could have been another Defendant, the jury is told that there is a settlement, but usually not told what that settlement is.
>
> [Shelter's counsel]: So, in this case, one of the alternatives that you're proposing is that they be told that there was a payment made by another insurance company for some of the bills but they are not to take that into consideration, the Court will handle that? And then you will take a set-off for the amount that's been stated?
>
> THE COURT: Yes.
>
> ....
>
> [Shelter's counsel]: All right. And then that will be something that we discuss later when we discuss jury instructions, in terms of the verbiage of the instructions?
>
> THE COURT: All right.
>
> [Shelter's counsel]: We'll agree to that, your Honor.
>
> THE COURT: So, you don't want me to tell the jury anything until instructions?
>
> [Shelter's counsel]: Correct. They will be instructed that there has been a payment made for some of the bills by a

2. Prior to its ruling the court requested that Shelter's counsel explain the relevance of the claims adjuster's offered testimony regarding bills submitted by Tam and paid by Guaranty. Shelter's counsel stated:

> The relevance, your Honor, is that they have already received partial payment from another personal injury protection carrier, and, therefore, they are not entitled to seek double recovery from another personal injury protection carrier. There's only one recovery for a Plaintiff under the [Act], not double recovery.

Subsequently, the court ruled:

> Okay. This Court has ruled on several occasions—as have most of the judges on this court—that [personal injury protection] benefits under [the Act] are not part of the com-

mon law; that they are derived directly from statutory construction and therefore are exclusive remedies.

> It is clear to this Court that based on Section 10–4–707, subparagraph 3, and Section 10–4–709, that benefits between insurance companies are to be coordinated. These are a direct benefit. It is not part of the additional Collateral Source rule.

Subsection 10–4–707(3) provides in relevant part that when two or more insurers "are liable to pay benefits on the same basis, any insurer paying benefits shall be entitled to an equitable pro rata contribution from such other insurer." Section 10–4–709, titled "Coordination of benefits," provides in part that insurers must coordinate their provision of benefits "[t]o avoid duplication of benefits."

different insurance carrier but that they are not to take that into consideration in arriving at their verdict—that that matter will be handled by the Court.

THE COURT: All right.

[Tam's counsel]: Fine, your Honor.

[Shelter's counsel]: Okay.

THE COURT: Okay. Great. Well, that takes care of [the claims adjuster], then. We don't need to hear from him.

[Shelter's counsel]: Correct.[3]

This colloquy indicates that Tam's counsel made a strategic decision during the trial to prevent Shelter from eliciting testimony from Guaranty's claims adjuster that Guaranty had paid some of Tam's medical bills, which she was asserting should have been paid by Shelter. Notwithstanding Tam's counsel's initial reservations about the trial court's jury-instruction proposals that would prevent Tam's double recovery of insurance benefits, Tam's counsel actively participated in the discussion of possible jury instructions. In fact, Tam's counsel suggested a "third alternative"—to not inform the jury "in any manner whatsoever" about Guaranty's payments to Tam and permit the trial court to "make a set-off following final verdict."[4] Ultimately, Tam's counsel agreed that the jury would be informed only that some of Tam's bills

had been paid by another insurer but that the court would "handle" this matter and the jury was not to take this into consideration, and that the court would set off the $3,957.54 settlement amount paid by Guaranty from the jury verdict.

The court of appeals held that because the jury specifically found that Shelter was liable for the full amount of the damages requested by Tam in the action, the trial court erred in deducting the settlement amount before trebling damages:

By deducting the settled amount before calculating interest and damages, the trial court is saying, in essence, that the $3,957.74 was promptly paid. That was not the jury's verdict. The jury was instructed,[5] without objection, that if it could not separate the damages of the two accidents, the defendant was responsible for the entire amount of unpaid expenses. The jury so found.

*Tam v. Shelter Mut. Ins. Co.*, 786 P.2d 501, 504 (Colo.App.1989). We believe that the court of appeals analysis is flawed. But for Tam's counsel's stipulation that the jury should be informed that some of Tam's bills had been paid, and his stipulation that the court would "handle" a setoff of the $3,957.54 amount following the jury's verdict, Shelter would have elicited testimony from the claims adjuster that

---

3. The trial court eventually gave the following jury instruction:

   You are instructed that another insurance company has paid for some of the medical expenses which are in issue in this case. You are not to consider that payment in determining this case. That is a matter which will be dealt with by the court at a later time.

4. During a pretrial conference Tam's counsel also objected to Shelter's plan, as revealed in its trial data certificate, to elicit testimony from three witnesses concerning insurance claims Tam submitted to Guaranty:

   Your Honor, this has nothing to do with this trial, as far as the jury is concerned. This may be a matter which the Court determines is appropriate for a set-off, but it is not something that should be turned over to the jury in this case—for the reason that it's highly prejudicial and misleading to the jury, who doesn't understand that people can be paid from more than one source. And certainly, this information would be highly prejudicial to [Tam] and, for that reason, is improper. It's immaterial to this case.

   . . . .

Subsequent to the filing of this case, I negotiated a settlement with the first insurance company to pay a portion of medical expenses, which they paid. And I have no objection to advising the Court that it was on a basis of 25 percent of the total medical bills incurred since August 5, 1985, the date of the second accident. I submit that that is not proper evidence to go before the jury in this case. It may be proper for the Court to consider in a set-off claim.

5. Jury Instruction No. 14 stated:

   If you are unable to separate the damages caused by the ailment or disability which existed before August 5, 1985, from the damages caused by the second accident, then the defendant, SHELTER MUTUAL INSURANCE COMPANY, under the Colorado No Fault Statute, is responsible for the entire amount of the unpaid chiropractic expenses incurred by the plaintiff since August 5, 1985.

Guaranty had paid some of Tam's medical bills. The stipulation, to which Tam's counsel assented, prevented the jury from hearing any evidence concerning whether Shelter was responsible for the "entire amount of unpaid expenses." *Id.* The jury's finding that Shelter was responsible for all of Tam's medical bills is immaterial.

Although the record does not specifically indicate that the stipulation required the court to deduct the $3,957.74 settlement amount *before* trebling damages, the discussions of the parties and the trial judge indicate that, at the very least, Shelter and the trial judge were insistent that Shelter should not be responsible in any way for Tam's medical expenses for which she had already received payment from Guaranty. It also appears almost certain that Tam's attorney was aware of Shelter's and the judge's position regarding Guaranty's payments to Tam, and yet Tam's attorney raised no objections or concerns over this matter. Accordingly, we conclude that the trial court did not err in deducting the settlement amount before trebling the damages awarded to Tam.

We reverse the judgment of the court of appeals on the issue of damages, and remand to the court of appeals with directions to reinstate the judgment of the trial court.

MULLARKEY, J., dissents.

Justice MULLARKEY dissenting:

I respectfully dissent.

The plaintiff, Winnie Tam, was injured in two automobile accidents and was under continuous medical care. Guaranty National Insurance Company (Guaranty) was Tam's insurer at the time of her first accident in November 1983 and Shelter Mutual Insurance Company (Shelter) was Tam's insurer at the time of her second accident in August 1985. Despite demands, neither insurance company paid the expenses at issue. Finally, Tam sued Shelter, and Guaranty settled one month later. The majority holds that the trial court was correct in deducting the amount that Tam received in settlement from Guaranty from the damages awarded by the jury against

Shelter prior to trebling the damage award pursuant to section 10-4-708, 4A C.R.S. (1987). I disagree.

As the majority concedes, *maj.op.* at 393, there was no express agreement among the parties that the Guaranty settlement would be deducted before the damages awarded against Shelter were trebled. I would construe this lack of express agreement against Shelter, the party which seeks the benefit of the offset. *Cf. Cingoranelli v. St. Paul Fire & Marine Ins. Co.*, 658 P.2d 863 (Colo.1983) (victim's general release of a tortfeasor did not release automobile insurer from obligation to pay personal injury benefits in absence of a specific provision including personal injury claims within terms of release). In the absence of an express agreement, Shelter's argument would make sense only if the jury had apportioned liability between the two insurance companies and Guaranty were found liable for an amount of medical expenses equal to its settlement with Tam. However, Shelter did not ask the jury to apportion liability and the jury did not do so. To the contrary, it found Shelter solely liable.

Jury Instruction No. 14, given without objection, states:

> If you are unable to separate the damages caused by the ailment or disability which existed before August 5, 1985 from the damages caused by the second accident, then the defendant, SHELTER MUTUAL INSURANCE COMPANY, under the Colorado No–Fault statute is responsible for the entire amount of the unpaid chiropractic expenses incurred by Plaintiff since August 5, 1985.

The plain language of the instruction makes clear that Shelter had the burden to prove that it was only liable for a portion of the claimed medical expenses. The jury found that Shelter did not carry its burden. In the special verdict form, the jury found all of the claimed expenses were attributable to the second accident. Question and answer number 3 read as follows:

> (3) Were the expenses for the chiropractic services rendered to the plaintiff

caused by the accident of August 5, 1985? (yes or no)

ANSWER: Yes.

Thus, the jury found that Shelter was liable for the entire amount of unpaid expenses incurred by Tam from the date of the second accident. *Cf. Empire Casualty Co. v. St. Paul Fire and Marine Ins. Co.*, 764 P.2d 1191 (Colo.1988) (without evidence of apportionment of loss, insurance company was held liable for total judgment). Accordingly, the court should have determined the amount of treble damages by using the total amount of unpaid damages, $8,311.78, as its base.

Rather than being held 100 percent liable as the jury found, Shelter's liability for treble damages is reduced by nearly one-half under the majority's approach. Shelter's conduct was found to be willful and wanton but Tam's victory is gutted. By this decision, Shelter is rewarded for its failure to obtain an express agreement on the relationship of the setoff to the treble damages and its failure to have the jury instructed on apportionment.

I would affirm the decision reached by the court of appeals.