**Gary A. WRIGHT, Plaintiff–Appellee,**

v.

**ESTATE OF Harold E. VALLEY; Robert G. Valley; as Personal Representative of the Estate of Harold E. Valley; Douglas Valley; Nicholas Valley; Mia Valley; and Lisa Valley, Defendants–Appellants.**

**No. 90CA1655.**

Colorado Court of Appeals, Div. I.

Jan. 16, 1992.

Hall & Evans, John D. Phillips, A. Peter Gregory, Denver, for plaintiff-appellee.

Gerald D. Hartert, Glenwood Springs, for defendants-appellants.

Opinion by Chief Judge STERNBERG.

In this interpleader action, the defendants, Estate of Harold E. Valley, its personal representative, and Douglas, Nicholas, Mia and Lisa Valley, appeal the judgment entered by the trial court in favor of the plaintiff, Gary A. Wright. We affirm.

Harold E. Valley, decedent, owned two condominiums which were subject to a judicial lien filed on behalf of his ex-wife to secure twenty years of periodic maintenance payments. The decedent arranged to sell the condominiums to Joseph Rodgers and David Bluefield Pearlstein (purchasers), and he introduced them to the plaintiff, attorney Gary A. Wright, who represented the purchasers in separate purchase transactions. The purchasers took title subject to the ex-wife's judicial lien which the decedent promised to continue to pay and eventually to discharge.

As part of the purchase price, each purchaser gave the decedent a promissory note secured by a deed of trust on the unit he had purchased. The sales contract for the Pearlstein transaction specifically provided for a right of set-off against amounts due on the promissory note in the event Pearlstein was required to make payment on the

obligation secured by the ex-wife's judicial lien.

Sometime after the sale of the units, the decedent made an annual maintenance payment. Thereafter, Rodgers, and later Pearlstein, negotiated and paid off their promissory notes to the decedent at a discount. Although Wright had no role in these negotiations, he did prepare documents to facilitate the cancellation and release of the notes and deeds of trust. Title to the condominium units remained subject to the judicial lien.

Pearlstein transferred the payoff amount of $110,000 to Wright's trust account. Wright used the funds to purchase a cashier's check which he delivered to the decedent. Shortly after delivery, the decedent appeared at Wright's office, endorsed the check to Wright's trust account, and requested Wright to hold the funds until he gave him further instructions.

Several days later, the decedent asked Wright to convert the funds to cash to be used for a trip to Spain where the decedent planned to seek treatment for a terminal illness. Before Wright could obtain the cash, the decedent, who was then hospitalized, asked Wright to give the funds to the decedent's children. Although Wright requested written instructions, the decedent died without having complied with this request.

Wright continued to hold the funds, first in a trust account for the decedent and then in an account in Wright's name in trust for the decedent's children. At the request of one of the children, Wright made an annual maintenance payment to the ex-wife, and he also paid himself a small fee from the funds.

When the next annual payment was not made, the ex-wife commenced foreclosure proceedings against the condominium units. Wright filed this interpleader action, and the purchasers counterclaimed against Wright for professional negligence. Ultimately, Wright's malpractice insurance carrier satisfied the lien, and the purchasers signed a release and an agreement assigning their subrogation rights to Wright.

Following a bench trial, the court held that the delivery of the check by the decedent to Wright and the substituted directions to Wright to give the funds to the decedent's children represented an incomplete gift and that, therefore, the money was an asset of the estate subject to any claim the purchasers had against the estate. The court also held that, by paying off the judicial lien, the purchasers had a claim to the funds as subrogees of the ex-wife, whose claims were secured by the equity in the condominiums, and that Wright, as assignee of the purchasers, was entitled to the funds subject to his paying it over to his malpractice insurance carrier.

On appeal, the defendants contend that the only claim to which Wright, as assignee, is subrogated by virtue of payment of the judicial lien is the ex-wife's right to foreclose on the property. They reason that because the lien did not attach to the proceeds of the sale, those funds are available to the estate to satisfy claims filed against it. Since the ex-wife failed to file a claim against the estate for payment of the obligation secured by the judicial lien in compliance with Colorado's nonclaim statute, they argue that she has no claim against the funds to which Wright could be subrogated.

In addition, the defendants contend that Wright is estopped to assert that the funds are subject to an equitable lien because such an assertion would destroy the financial advantage and consideration to the decedent and his estate in entering into the discounted payoff transactions.

Finally, the defendants contend that, under the doctrine of "unclean hands," Wright is not entitled to equitable relief because his claim to the funds arises from his breach of a fiduciary duty to the decedent.

I.

The determinative question before us is the nature of the rights to which Wright, as the assignee of the purchasers, is subrogated.

■ A right of subrogation arises when a debt, for which a party other than the subrogee is primarily liable, is discharged by the subrogee for the protection of his own rights or interests. *Caito v. United California Bank*, 20 Cal.3d 694, 144 Cal.Rptr. 751, 576 P.2d 466 (1978). A subrogee steps into the shoes of the subrogor and cannot possess rights greater than those of the latter. *Union Insurance Co. v. RCA Corp.*, 724 P.2d 80 (Colo.App.1986).

Here, the debt owed by the decedent was paid to prevent the ex-wife from enforcing her judicial lien by foreclosing on the property owned by the purchasers. Although Wright's malpractice insurer actually satisfied the lien, it did so as consideration for the purchasers' assignment of their rights as subrogees of the ex-wife to Wright, who, in turn, promised to pay to his insurer any award resulting from the interpleader action. Consequently, Wright stands in the shoes of the ex-wife and may assert any claims she would have had against the estate or otherwise for payment of the decedent's maintenance obligation to her.

■ The ex-wife's right to enforce her judicial lien through foreclosure is not affected by § 15–12–801, et seq., C.R.S. (1987 Repl.Vol. 6B), the state's nonclaim statute. As a secured creditor, she could proceed against the property without filing a claim against the estate. *See Willis v. Neilson*, 32 Colo.App. 129, 507 P.2d 1106 (1973). Therefore, Wright, as her subrogee by assignment, could also bring a foreclosure action.

However, the purchasers were attempting to sell the property and wanted the lien satisfied in order to clear the title. It is unlikely they would have released their malpractice claim action against Wright or assigned their rights as subrogees to him had they thought he would exercise the foreclosure remedy. Rather, the purchasers believed they had a right to the proceeds of the sale in the hands of the estate, and it was their claim to this right which they expected Wright to assert as their assignee.

The defendants argue, however, that because the judicial lien did not attach to these proceeds, the nonclaim statute applies, and the wife's failure to file a timely claim extinguished her right, and consequently that of her subrogees, to be paid from these funds.

■ If the owner of property, on which another has a lien, sells it to an innocent purchaser for value who is protected from the lien, the lienor has a right to have the lien transferred to the proceeds of the sale. But, if a lien is not destroyed by the sale of the property, the lienor ordinarily has no right to the proceeds. *Morgan Plan Co. v. Bruce*, 266 Ala. 494, 97 So.2d 805 (1957). However, in *Fort Lupton State Bank v. Murata*, 626 P.2d 757 (Colo.App.1981), this court held that "a statutory lien on real property may become an équitable lien on the proceeds of the sale when the particular circumstances of a case render the statutory remedy ineffectual."

In *Murata*, the debtor conveyed an oil and gas production lease on the mineral estate he owned, after which several creditors with liens against the real property of the debtor commenced a foreclosure action. Upon learning that the property was subject to foreclosure, the lessee, the debtor, and the creditors entered an agreement by which the creditors would forebear foreclosure proceedings and allow production to commence if the royalty proceeds accruing to the debtor would first be applied to satisfy their judgments.

This court held that although the district court's order distributing these proceeds was "not couched in terms of an equitable lien," such a lien was the result of that order. We noted that, under the circumstances there at issue, the statutory foreclosure remedy would be ineffectual. Because the debtor, creditors, and purchaser had agreed to waive foreclosure and to allow the royalty proceeds to stand in lieu of the royalty interest itself, we held these proceeds could be used to satisfy the liens against the property.

Here, the purchasers took title subject to the judicial lien, and neither the promissory note nor the final payoff documents released it. Consequently, the judicial lien

remained an encumbrance on the property, and did not attach to the proceeds of the sale.

 However, the ex-wife's statutory remedy of foreclosure, to which the purchasers, and Wright as their assignee, were subrogated, would be ineffectual. They satisfied the lien for the very purpose of precluding foreclosure and to clear title to the property. Because the statutory foreclosure remedy would be ineffectual here, we affirm the trial court's order awarding the monies to Wright on the grounds that the statutory lien on the property became an equitable lien on the proceeds of the sale.

## II.

 Consequently, we find no merit in the defendants' contention that Wright is estopped to assert that the monies are subject to an equitable lien. They argue that part of the consideration for the decedent's discounting of the promissory notes was that he would have the free use of the proceeds for several years while he continued to pay the non-interest bearing obligation secured by the judicial lien over time. The defendants contend that this conduct by the parties is evidence that they did not intend that the proceeds were to be charged as security for the decedent's obligation. However, we have concluded that an equitable lien attached to the funds, not based on conduct of the parties indicating an intent to charge them, but because the circumstances of the case made the statutory remedy to which Wright was subrogated ineffectual. Therefore, the defendants' estoppel argument based on the parties' conduct does not apply.

## III.

Finally, we reject the defendants' argument that Wright is not entitled to relief because his claim to the funds arose from his breach of a fiduciary duty to the decedent. The trial court found there was insufficient evidence to establish that Wright breached any duty he may have owed to the decedent's children, and the record supports that determination. Hence, it is bind-ing on review. *See Peterson v. Ground Water Commission*, 195 Colo. 508, 579 P.2d 629 (1978).

The judgment is affirmed.

PIERCE and DAVIDSON, JJ., concur.