Linda DALE, Petitioner,

v.

**GUARANTY NATIONAL INSURANCE COMPANY, Respondent.**

No. 96SC381.

Supreme Court of Colorado.

Nov. 24, 1997.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to review an unpublished court of appeals' decision rejecting the appeal of petitioner Linda Dale (Dale) and affirming the trial court's grant of summary judgment in favor of respondent, Guaranty National Insurance Company (GNIC), on Dale's claim of bad faith breach of an insurance contract.[1] The court of appeals affirmed the trial court's holding that the doctrine of collateral estoppel applied to an arbitration panel's determination that GNIC's misconduct was not willful and wanton and, as a result, precluded further litigation on the issue of bad faith. We reverse and clarify the relationship between the contract claim of willful and wanton misconduct by an insurance company under section 10–4–708, 4A C.R.S. (1987 & 1990 Supp.), and the tort claim of insurance bad faith.

## I.

GNIC insured Dale for automobile coverage. Through no fault of Dale's, she and her children were injured in a car accident on August 19, 1987. Dale went to numerous health care providers, including a GNIC-required physician who in turn referred Dale to additional health care providers.

GNIC refused to pay bills totaling over $8,000 from these health care providers because GNIC concluded that Dale had reached "maximum medical improvement." Dale asserts that the unpaid providers refused to provide further services and she could not secure medical treatment for a period of more than twelve months until after she prevailed in the mandatory arbitration proceeding.

Melat, Pressman, Ezell & Higbie, Alan Higbie, Colorado Springs, for Petitioner.

Nathan, Bremer, Dumm & Myers, P.C., Ellis J. Mayer, Denver, for Respondent.

On June 29, 1990, Dale filed a demand for arbitration under section 10–4–708 which at that time required that insurance claimants

1. We granted certiorari on the following issues: 1) Whether the court of appeals erred giving issue preclusive effect to a finding from a mandatory No–Fault "arbitration," which is a special statutory proceeding designed for limited and speedy determination, which did not allow for broad judicial review.

2) Whether the court of appeals erred in holding that the issues determined in a mandatory No–Fault "arbitration" proceeding were identical to issues that Plaintiff needed to prove in an insurance bad faith case.

submit to binding arbitration.[2] Dale also filed suit against GNIC in El Paso County District Court on June 18, 1991. Dale's complaint alleged outrageous conduct; bad faith breach of insurance contract and resulting damages including aggravation of physical condition; and noneconomic damages. Dale additionally alleged GNIC acted with willful and wanton intent with regard to the alleged tortious activities, entitling Dale to punitive damages.

The arbitration took place on November 14, 1991, and the panel awarded Dale $8,627.12, finding GNIC's failure to pay health care providers was wrongful but not willful and wanton. After approximately one month, GNIC sent a check made payable to Dale, her attorney, and seven health care providers (nine-party check). Because Dale had difficulty in gathering the necessary signatures to cash the check, she returned the check to GNIC and eventually received payment in another form. Dale was able to resume her medical treatment only after a fourteen month hiatus caused by GNIC's nonpayment. According to medical testimony, Dale developed an aggravated condition, reflex sympathetic dystrophy, and her prognosis worsened because her injuries were not treated during the interim when GNIC refused payment.

GNIC filed a motion for partial summary judgment in the district court suit, contending that the arbitration panel's finding that GNIC did not engage in willful and wanton conduct precluded Dale's bad faith claim. Dale opposed the motion with deposition excerpts and affidavits, including an affidavit from an insurance expert stating that GNIC's post-arbitration conduct constituted harassment and further delayed her right to recovery. The trial court granted summary judgment on the bad faith claim, concluding that willful and wanton conduct is synonymous with bad faith conduct, and consequently, the determination of the arbitration panel precluded Dale's bad faith claim. With re-

gard to Dale's bad faith claim concerning GNIC's conduct after the arbitration, the trial court ruled that the issuance of the nine-party check was not probative of bad faith and excluded the evidence. The court of appeals affirmed the trial court's ruling that Dale's bad faith claim was collaterally estopped, and stated that the trial court did not abuse its discretion in ruling that evidence of the nine-party check was irrelevant.

## II.

### A.

■ Dale argues that the arbitration panel's decision should not be given issue preclusive effect because the mandatory arbitration under the No–Fault Act is a special statutory proceeding designed for limited and speedy determination which does not allow for broad judicial review. We reject this argument.

At the time Dale filed her demand for arbitration, the Colorado Auto Accident Reparations Act, also known as the No–Fault Act, sections 10–4–701 to –721, 4A C.R.S. (1987 & 1990 Supp.), required arbitration. *See* § 10–4–708(1.5), 4A C.R.S. (1990 Supp.). Section 10–4–708 then read:

Prompt payment of direct benefits. (1) Payment of benefits ... shall be made on a monthly basis. Benefits for any period are overdue if not paid within thirty days after the insurer receives reasonable proof of the fact and amount of expenses incurred during that period.... In the event that the insurer fails to pay such benefits when due, the person entitled to such benefits may bring an action in contract to recover the same.

*(1.5) Any action for breach of contract brought pursuant to subsection (1) of this section shall proceed to binding arbitration pursuant to the following provisions:*

. . . .

(d) ... In the event the insurer is required by such arbitration to pay any over-

---

**2.** In 1989 the General Assembly amended section 10–4–708 to provide for mandatory arbitration of all claims and disputes arising on or after July 1, 1989, and to examinations or treatment occurring on or after July 1, 1989. *See* ch. 82, secs. 2, 6, § 10–4–708, 1989 Colo.Sess.Laws 458, 458–

**61.** Section 10–4–708 was amended in 1991 to provide insureds with an election to resolve disputes through binding arbitration. *See* ch. 203, § 10–4–708, 1991 Colo.Sess. Laws 1185, 1185–86.

due benefits, the insurer shall, in addition to the benefits paid, be required to pay the reasonable attorney fees and compensation of the arbitrator or arbitrators and all other costs and fees of the arbitration incurred by the person entitled to such benefits.... *[I]n the event of willful and wanton failure of the insurer to pay such benefits when due, the insurer shall pay to the other party, in addition to any other amount due to the other party under this subsection (1.5), an amount which is three times the amount of unpaid benefits in controversy in the action.*

§§ 10–4–708(1), (1.5)(d), 4A C.R.S. (1990 Supp.) (emphasis added); *see supra* text accompanying note 2.

We upheld the constitutionality of mandatory arbitration under section 10–4–708(1.5) in *State Farm v. Broadnax,* 827 P.2d 531 (Colo.1992). Under the statutory scheme, Dale had the right to a hearing in which she could present all the evidence and raise all the defenses available to her. *See Broadnax,* 827 P.2d at 537. Additionally, Dale could have resorted to the formal judicial system if she found the arbitrator's order adverse to her interests. *See id.* The Uniform Arbitration Act, §§ 13–22–201 to –223, 6A C.R.S. (1987), provides that parties may apply to the courts both to vacate awards where the arbitrators exceeded their powers or where an award was procured improperly, *see* § 13–22–214, and parties may apply to the courts to modify or correct arbitration awards where there was an evident mistake. *See* § 13–22–215. Dale did not challenge the arbitration award rendered in this matter.

Collateral estoppel and res judicata have been applied to arbitration proceedings. *See Rodriguez v. Bar–S Food Co.,* 567 F.Supp. 1241, 1245 (D.Colo.1983) (holding that under Colorado law, an arbitration may be given preclusive effect against a subsequent judicial proceeding); *see also Foust v. Aetna Cas. & Ins. Co.,* 786 P.2d 450, 451 (Colo.App. 1989) (stating arbitration award is binding and arbitrator is final judge of questions of law and fact). Citing *Restatement (Second) of Judgments* § 84 cmt. a (1982), Dale argues that the mandatory arbitration under the No–Fault Act is not a true form of arbitration but is a type of litigation before a specialized tribunal. Because the arbitration panel did not have jurisdiction to address Dale's tort claims and the scope of judicial review is limited, Dale would have us conclude that she is not precluded from relitigating all issues in her tort action.

These two factors, however, do not distinguish the mandatory arbitration under the No–Fault Act from other cases in which res judicata and collateral estoppel have been applied. It is characteristic of arbitration that the scope of judicial review is limited and, as noted above, arbitration awards have been given preclusive effect.

Similarly, the jurisdiction of an agency is characteristically limited in administrative adjudication. Yet, it is well established that the doctrines of res judicata and collateral estoppel may be applied to the adjudicatory decisions of administrative bodies.[3] *See Salida Sch. Dist. R–32–J v. Morrison,* 732 P.2d 1160, 1163 (Colo.1987); *Umberfield v. School Dist. No. 11,* 185 Colo. 165, 169, 522 P.2d 730, 732 (1974) (holding that prior administrative proceeding under Teacher Tenure Act and res judicata barred claim in proceeding in front of Civil Rights Commission). The findings of fact of an administrative agency, acting in an adjudicatory capacity, may be binding on the parties in a subsequent proceeding if the agency resolved disputed issues of fact which the parties had an adequate opportunity to litigate. *See Industrial Comm'n v. Moffat County Sch. Dist. RE No. 1,* 732 P.2d 616, 620 (Colo.1987). Therefore, we conclude that the nature of the mandatory arbitration under the No–Fault Act does not automatically negate the application of collateral estoppel.

### B.

To determine, then, whether this arbitration proceeding should be given preclu-

---

**3.** Collateral estoppel (issue preclusion) differs from res judicata (claim preclusion) in that it applies even though the claim for relief is different from that involved in the original controversy; however, only res judicata applies to matters which could have been litigated but were not. *See Umberfield v. School Dist. No. 11,* 185 Colo. 165, 170, 522 P.2d 730, 732 (1974).

sive effect, we look to the factors of the collateral estoppel test. Collateral estoppel, or issue preclusion, bars relitigation of an issue determined in a prior proceeding if: (1) the issue precluded is identical to an issue actually determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party in the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted has had a full and fair opportunity to litigate the issue in the prior proceeding. *See Maryland Cas. Co. v. Messina*, 874 P.2d 1058, 1061 (Colo. 1994).

In this case, the second and third factors are met. The parties are the same and the arbitration panel rendered a final judgment on Dale's contract claim against GNIC.[4] The arbitration panel awarded $8,627.12 to Dale and found that GNIC did not act in a willful and wanton manner with regard to its failure to pay benefits when due. Dale did not contest the arbitrators' decision as permitted by sections 13–22–201 to –223, 6A C.R.S. (1987).

As for the fourth factor of the collateral estoppel test, the arbitration procedure gave the parties a full and fair opportunity to litigate the willful and wanton issue. As noted above, this court has held that under the statutory scheme of the No–Fault Act, mandatory arbitration gives parties a right to a hearing where they can present all evidence and raise all available defenses, as well as access to the judicial system after arbitration.[5] In *Broadnax*, we stated:

"To subject factual findings made by arbitrators ... to de novo review by the court would, in many cases, make those proceedings merely way stations to the courts, and would thereby create the very risks that the compulsory arbitration provision was designed to avoid."

827 P.2d at 537 (quoting *Chmielewski v. Aetna Cas. and Sur. Co.*, 218 Conn. 646, 591 A.2d 101, 109 (1991)).

Consequently, only the first factor of the collateral estoppel test, whether the issue precluded is identical to an issue actually determined in the prior proceeding, remains to be determined. We now turn to that question.

### C.

The panel of arbitrators held that the "failure to pay [overdue bills], *although wrongful, is not determined to be willful and wanton.*" (Emphasis added.) Dale argues that the arbitrators' finding that the failure to pay overdue bills was not willful and wanton does not implicate the doctrine of collateral estoppel with regard to her bad faith claim. The court of appeals upheld the district court's dismissal of Dale's claims and construed *Leahy v. Guaranty National Insurance Company*, 907 P.2d 697 (Colo.App.1995), *cert. denied*, No. 95SC514 (Colo. Dec. 11, 1995), to stand for the proposition that:

[T]he issue whether an insurer acted in a willful and wanton manner in delaying or denying the payment of benefits *is identical* to the issue of bad faith in a tort claim alleging first-party bad faith breach of an insurance contract.

*Dale v. Guaranty Nat'l Ins. Co.*, No. 94CA1080, slip op. at 3 (Colo.App.1996) (emphasis added).

---

4. Regulation 89–4, promulgated under the authority of sections 10–1–109 and 10–4–708, 4A C.R.S. (1987 & 1990 Supp.), specifically states:

Unless modified, corrected or vacated pursuant to section O. of these rules or provisions of section 13–22–201, C.R.S., *et seq.*, the decision of the arbitrators shall be final. The final award may be confirmed and converted to a judgment in accordance with sections 13–22–213 and 216, C.R.S.

*Regulation 89–4*, 3 CCR 702–5 (1989) (currently Regulation 5–2–4).

5. Regulation 89–4 applies C.R.C.P. 26, 28, 29, 30, 32, 45, and 121, and although the regulation limits discovery to one set of interrogatories and one set of requests for production of documents, it does not limit the number of depositions taken for perpetuation of testimony at the arbitration hearing. Regulation 89–4, 3 CCR 702–5 (1989) (currently Regulation 5–2–4). Regulation 89–4 requires a disclosure statement, and allows for the filing of briefs. *See id.* At the hearing, the rules of evidence are to be applied "as necessitated in the opinion of the arbitrators by the requirements of justice." *See id.*

To determine whether the court of appeals' analysis is correct, we must compare the elements of an insurance bad faith claim with the definition of willful and wanton conduct. For an insured to prevail on a first-party tortious bad faith breach of contract claim against the insurer,[6] the insured must establish that the insurer acted: (1) unreasonably and (2) with knowledge of or reckless disregard of its unreasonableness. *See* § 10–3–1113(3), 3 C.R.S. (1997); *Farmers Group*, 805 P.2d at 421; *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo.1985).

This court previously has not defined "willful and wanton" under the No–Fault Act. Section 13–21–102(1)(b), 5 C.R.S. (1997), however, gives the definition of "willful and wanton" for purposes of determining exemplary damages:

> As used in this section, "willful and wanton conduct" means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff.

Adapting this definition to the insurance context, the court of appeals has held that under the No–Fault Act, willful and wanton failure to pay benefits when due is established when "an insurer acts without justification and in disregard of plaintiff's rights." *Burgess v. Mid–Century Ins. Co.*, 841 P.2d 325, 329 (Colo.App.1992); *see Tam v. Shelter Mutual Ins. Co.*, 786 P.2d 501, 503 (Colo.App.1989), *rev'd on other grounds*, 811 P.2d 388 (Colo. 1991); *see also Wilson v. State Farm Mut. Auto. Ins.*, 934 F.2d 261, 265 (10th Cir.1991) (applying Colorado law). We agree and adopt the court of appeals' definition of willful and wanton for purposes of the award of treble damages under section 10–4–708(1.5)(d), 4A C.R.S. (1987 & 1990 Supp.).

The court of appeals first dealt with the comparison of insurance bad faith and willful and wanton conduct in *Leahy*. *See Leahy*, 907 P.2d at 700. The arbitration panel in *Leahy* found that the insurer's conduct was not willful and wanton under the No–Fault

Act because the insurance company used a permissible method to determine the reasonableness of medical charges. *See id.* The court of appeals held that "this finding [by the arbitrators] amounted to a determination that defendant acted with a reasonable basis in delaying or denying payment of a portion of plaintiff's claims and that this finding is adverse to plaintiff on a critical element of his bad faith claim." *Id.*

In the case now before us, the court of appeals relied on *Leahy* in holding that willful and wanton conduct is identical to insurance bad faith. *See Dale*, No. 94CA1080, slip op. at 3. We reject this reasoning, and, to the extent *Leahy* can be read as equating willful and wanton conduct under the No–Fault Act and insurance bad faith, we overrule it. Proof of willful and wanton conduct as we have defined it will also prove that the insurer knowingly or recklessly acted unreasonably toward its insured. In other words, a finding that the insurer has engaged in willful and wanton conduct under the No–Fault Act is also a finding of bad faith. *See Farmers Group*, 805 P.2d at 422 n. 5 (stating that plaintiff failed to illustrate a circumstance in which a willful and wanton refusal to pay insurance benefits would not also be bad faith conduct); *see also* § 10–3–1113, 3 C.R.S. (1997) (allowing consideration of willful conduct in determining whether conduct is reasonable in contract or tort claim).

However, because willful and wanton conduct under the No–Fault Act is a subset of insurance bad faith, a finding that the insurer's conduct was not willful and wanton is not the equivalent of a finding that the insurer did not act in bad faith. While a willful and wanton claim under the No–Fault Act is limited to the circumstances concerning the refusal to pay insurance benefits when due, the tort of bad faith breach of an insurance contract encompasses an entire course of conduct and is cumulative. *See Savio*, 706 P.2d at 1268; *Southerland v. Ar-*

---

6. Every insurance contract contains an implied covenant of good faith and fair dealing which imposes upon insurers a duty to act in good faith in their dealings with their insured. *See Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo.1984).

*gonaut Ins. Co.,* 794 P.2d 1102, 1106 (Colo. App.1990). In *Savio* [7], this court stated:

> [T]he duty of good faith derives from the relationship of an insured claimant to the provider of benefits. This relationship, arising from the underlying insurance or compensation obligation, precedes official intervention and permeates all of the dealings between the parties.

*Savio,* 706 P.2d at 1268. A determination of willful and wanton conduct necessarily is limited to events occurring before the arbitration. However, claims of insurance bad faith may encompass all of the dealings between the parties, including conduct occurring after the arbitration procedure.[8]

■■■■ While the claims of bad faith and willful and wanton conduct are not identical, a finding on the element of reasonableness in the willful and wanton claim may be preclusive with respect to the same element in the bad faith claim if the same conduct is at issue in the tort proceeding. *Cf. Industrial Comm'n v. Moffat County Sch. Dist.,* 732 P.2d 616, 620 (Colo.1987) (holding that collateral estoppel may apply to a claim different from that litigated in the original controversy). Thus, collateral estoppel applies only when the evidence supporting the insured's bad faith insurance claim is identical to the evidence supporting the insured's willful and wanton claim. *See Messina,* 874 P.2d at 1061. Where the insured presents additional evidence of bad faith, such as misconduct which occurred after the arbitration was completed, and such evidence could not have been presented in the arbitration proceeding, collateral estoppel does not apply.

In this case, the trial court and court of appeals applied the wrong legal standard because both equated willful and wanton conduct under the No–Fault Act with insurance bad faith. The statutory contract claim presented at the arbitration only included evidence of the insurer's activities up to the time of the actual arbitration. However, the common law tort claim of bad faith included the entire course of the insurer's conduct with respect to Dale's benefits until the time of trial. Dale made a showing of alleged additional misconduct which occurred after the arbitration award was rendered. This new evidence of bad faith must be examined in the context of the evidence considered by the arbitrators. *See Savio,* 706 P.2d at 1270.[9]

As discussed above, the tort of bad faith breach of insurance contract encompasses an entire course of conduct. *See Savio,* 706 P.2d at 1268; *Southerland,* 794 P.2d at 1106. The *Southerland* court held that evidence of bad faith conduct which occurred after the filing of the complaint was admissible because this evidence was "a continuation of the same difficulties that preceded the filing of the complaint" and was relevant as evidence of a pattern of defendant's bad faith dealings with the plaintiff.[10] *Southerland,*

---

**7.** We recently affirmed the binding precedent of *Savio* when we held that the 1991 amendment to the Colorado Workers' Compensation Act, which provided for an increased penalty for mishandling claims, did not abolish the common law remedy for bad faith. *See Vaughan v. McMinn,* 945 P.2d 404, 409–10 (Colo.1997).

**8.** Other jurisdictions have held that a bad faith claim can survive particular arbitration proceedings. *See Pulley v. Preferred Risk Mut. Ins. Co.,* 111 Nev. 856, 897 P.2d 1101, 1103 (1995) (holding that an arbitrator's decision on contract claims did not preclude tortious bad faith claim arising from delay in payment of arbitrator's award); *Belco Petroleum Corp. v. AIG Oil Rig,* 164 A.D.2d 583, 565 N.Y.S.2d 776, 784–85 (1991) (stating that, because an arbitration panel did not have power to award punitive damages for bad faith, consideration of bad faith issues by arbitration panel was not binding).

**9.** The *Savio* court stated, "[T]he tort of bad faith depends on the conduct of the insurer regardless of the ultimate resolution of the underlying compensation claim." *Savio,* 706 P.2d at 1270.

**10.** A pattern of delay or denial of payments may serve as a basis for a bad faith claim. Section 10–3–1104(1)(h), 4 C.R.S. (1987), defines unfair claim settlement as "[c]ommitting or performing, either in willful violation of this part 11 *or with such frequency as to indicated a tendency to engage in a general business practice,* any of the following ... (VI) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear...." (Emphasis added.) We note that the court of appeals has stated that sections 10–3–1101 through –1112, 4A C.R.S. (1987), provide for state regulation of insurance companies and do not create a private cause of action. *See Schnacker v. State Farm Mut. Auto. Ins.,* 843 P.2d 102, 104 (Colo.App.1992). That issue is not be-

794 P.2d at 1106. Consequently, evidence of bad faith must be examined in its entirety.

■ In summary, we hold that a finding that conduct is not willful and wanton under section 10–4–708(1.5), 4A C.R.S. (1990 Supp.), by an arbitration panel does not preclude the tort claim of bad faith if: (1) additional evidence of bad faith exists other than the misconduct evidence that was presented to and considered by the arbitration panel, and (2) the additional evidence could not have been presented to the arbitrators. When such evidence is shown, then the evidence concerning the tort of bad faith must be examined in its entirety, including any relevant evidence considered by the arbitration panel.

### III.

We now apply the analytical framework stated above to the facts of this case. Because this case is before us on appeal from a grant of summary judgment for GNIC, it is useful to review the general principles applicable to such an appeal. Summary judgment is a drastic remedy and only is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See* C.R.C.P. 56(c); *Casebolt v. Cowan*, 829 P.2d 352, 354 (Colo.1992). In determining whether summary judgment is proper, the nonmoving party is entitled to the benefit of all favorable inferences that may reasonable be drawn from the undisputed facts, and all doubts must be resolved against the moving party. *See Casebolt*, 829 P.2d at 354. A court must consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits in determining whether to grant a motion for summary judgment. *See id.*

■ In this case, the arbitration panel found GNIC's conduct was wrongful, but was not willful and wanton. Dale argues that there is additional evidence of the insurer's bad faith which was not before the arbitration panel and could not have been consid-

ered by the panel. The additional evidence includes GNIC's extended delay in providing payment to Dale after the arbitration was completed and GNIC's unreasonable form of payment (a nine-party check) which caused more delay and harassment. Excluding this evidence because it was irrelevant, the trial court stated:

> [W]illful and wanton conduct *is synonymous* with bad faith conduct.... I think collateral estoppel and probably res judicata as well bars the Plaintiff from litigating any bad faith issue that allegedly occurred prior to the arbitration award.

(Emphasis added.) The court of appeals affirmed on the same reasoning. *See Dale*, No. 94CA1080, slip op. at 3.

Considering the question of law first, it is clear from our discussion above that GNIC was not entitled to judgment as a matter of law. Both courts wrongly equated willful and wanton conduct under the No–Fault Act with insurance bad faith. Both failed to recognize that the claims are different when, as here, the insured presents evidence of insurer bad faith conduct which was not, and could not have been, presented to the arbitrator.

Turning to the material facts, we find that they are not undisputed. Viewed in the light most favorable to Dale, the evidence shows that GNIC sent Dale a nine-party check made payable to Dale, her attorney, and seven health care providers approximately one month after the arbitration award. In order to cash such a check, Dale would have had to drive throughout the metropolitan area with the single check, wait in seven different offices of various health care providers, arrange to meet with seven separate billing clerks or other agents, explain why they should endorse a multi-party check, and ensure that all nine signatures fit in the small area on the back of the check. Dale, not having received medical care for over a year, was in pain and was unable to collect the necessary signatures on the check. When Dale returned the check to GNIC, she did not receive another check until late Janu-

---

fore us and we do not decide it. However, the statute illustrates conduct that this legislature found to be unreasonable. Plainly, evidence of a consistent pattern of delaying payments due, in-

cluding arbitration awards, is relevant for an insurance bad faith claim and would tend to prove bad faith on the part of the insurance company.

ary 1992, two months after the arbitration award. According to Dale's insurance expert, GNIC's post-arbitration conduct was not reasonable and was not consistent with industry practice.

The trial court ruled that evidence of the nine-party check was irrelevant, noted that the issuance of such checks was a common business practice for insurers, and stated that Dale had several remedies at her disposal by which she could have avoided any delay resulting from the multi-party check, including refusing the check. We reject this reasoning.

■ The evidence offered was not made irrelevant simply because Dale could have refused the check or reduced the award to judgment via the judicial process. Whether the nine-party check was consistent with industry practice and was appropriate under the facts of this case were not questions of law to be decided by the trial court. *See United Blood Serves. v. Quintana*, 827 P.2d 509 (Colo.1992).[11] Dale offered expert testimony by an insurance claims manager to prove that the nine-party check did not meet industry standards. In addition, we note that the terms of the insurance contract between GNIC and Dale may be relevant to determine the propriety of including health care providers as payees on the nine-party check. *Cf. Parrish Chiropractic v. Progressive Cas.*, 874 P.2d 1049, 1056–57 (Colo.1994) (holding that a health care provider was not a third-party beneficiary to an insurance policy between the insurance company and the insured, and as a result, had no direct claim for relief against the insurance company for payment of benefits due by the insured). On remand the fact finder must determine whether the nine-party check and the two-month delay in payment, together with

GNIC's entire course of conduct, prove the tort of insurance bad faith.

Because both courts applied the wrong legal standard and because there are genuine issues as to material facts, summary judgment was erroneously granted.

### IV.

Accordingly, we reverse the judgment of the court of appeals and direct that court to return the case to the district court for further proceedings consistent with this opinion.

VOLLACK, C.J., concurs in part and dissents in part.

Chief Justice VOLLACK concurring in part and dissenting in part:

I concur with the majority's holding that the doctrine of collateral estoppel (issue preclusion) applies to the final decision of an arbitration panel sitting pursuant to section 10–4–708(1.5), 4A C.R.S. (1990 Supp.). *See* maj. op. at 549. However, I disagree with the majority's holding that collateral estoppel does not preclude petitioner Linda Dale (Dale) from relitigating, in the context of a tort claim for bad faith breach of insurance contract, an arbitration panel's final decision that Guaranty National Insurance Company (GNIC) did not engage in "willful and wanton" conduct under section 10–4–708(1.5)(d), 4A C.R.S. (1990 Supp.). *See* maj. op. at 552. According to the majority, the elements of collateral estoppel are not satisfied because the "willful and wanton" issue decided by the panel is narrower in scope than the "bad faith" issue raised by Dale's tort claim, which encompasses both GNIC's pre-arbitration and post-arbitration conduct. *See* maj. op. at 552–53. In my view, collateral estoppel precludes Dale from relitigating the issue of GNIC's pre-arbitration conduct because this

---

11. The *Quintana* court held that while the question of legal duty is a question of law and the source of the duty may originate from a statute or caselaw, the plaintiff should have been allowed to present expert testimony evidence that the professional standard of care was unreasonable. *See* 827 P.2d at 519–21. The *Quintana* court also stated:

If, on the other hand, the jury is not convinced by a preponderance of the evidence that the standard of care adopted by the defendant's school is unreasonably deficient, *the jury* must accept the standard of the defendant's school of practice as conclusive evidence of reasonable care and [the jury] must determine the issue of negligence on the basis of the defendant's compliance or noncompliance with that standard.

*Id.* at 521 (emphasis added).

portion of Dale's bad faith claim is identical to the issue already determined by the arbitration panel. Furthermore, I disagree with the majority's reliance on evidence of GNIC's post-arbitration conduct to support its holding because such evidence was excluded by the trial court. For these reasons, I would affirm the court of appeals.

## I.

In 1987, Dale was injured in an automobile accident. She received treatment from several health care providers and filed claims with GNIC to cover the costs of her care. Ten months after the accident, Dale filed a demand for arbitration pursuant to section 10–4–708, 4A C.R.S. (1990 Supp.), alleging that GNIC had failed to pay her claims in a timely fashion. Dale also filed suit against GNIC, alleging, among other claims, bad faith breach of her insurance contract.

The arbitration panel found that GNIC's conduct, "although wrongful, is not determined to be willful and wanton under C.R.S. 10–4–708(1.5)(d)." In response to the panel's ruling, GNIC issued a nine-party check to Dale, her attorney, and seven of her health care providers. Dale returned the check to GNIC, saying it was difficult for her to cash, and GNIC issued payment in another form.

GNIC then moved the trial court for summary judgment, arguing that because the panel found GNIC's pre-arbitration conduct was not "willful and wanton," Dale was precluded from relitigating that issue, which was an essential element of her bad faith claim. Dale countered that GNIC's bad faith was a completely different issue from that decided by the panel because some of GNIC's alleged bad faith conduct, namely the issuance of the nine-party check, occurred after the panel's decision.

The trial court granted GNIC's motion for summary judgment, finding that the issue of GNIC's pre-arbitration conduct had already been decided by the panel. The trial court also excluded evidence of GNIC's post-arbitration conduct involving the nine-party check, holding that such evidence was irrelevant to Dale's bad faith claim because the nine-party check was issued to ensure that each party who had provided services would be properly paid. The court of appeals affirmed both the grant of summary judgment in favor of GNIC and the exclusion of evidence regarding GNIC's post-arbitration conduct.

## II.

### A.

"The whole policy of the law is against the retrial of issues already litigated by the parties." *State Compensation Ins. Fund v. Luna*, 397 P.2d 231, 233, 156 Colo. 106, 109 (1964). This policy is embodied in the doctrine of collateral estoppel, which provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). A fundamental purpose of collateral estoppel is to protect a defendant from having to relitigate issues that have already been determined in a valid and final judgment. *See People v. Smith*, 938 P.2d 111, 113 (Colo. 1997).

In order for the doctrine of collateral estoppel to bar relitigation of an issue determined in a prior proceeding, four elements must be satisfied: (1) the issue precluded must be identical to an issue actually determined in the prior proceeding; (2) the party against whom estoppel is asserted must have been a party to or in privity with a party in the prior proceeding; (3) there must have been a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding. *See Maryland Cas. Co. v. Messina*, 874 P.2d 1058, 1061 (Colo. 1994).

The majority finds that the last three elements of this test have been satisfied in regard to the arbitration panel's decision. *See* maj. op. at 550. As a result, the majority focuses on the first factor of the test: whether the issue before the trial court is identical to the issue actually determined by the arbitration panel. *See* maj. op. at 550–51. The

arbitration panel determined that GNIC's conduct was not "willful and wanton" under section 10–4–708(1.5)(d). The majority concludes, however, that the scope of the "willful and wanton" issue determined by the panel is not identical to the scope of the "bad faith" issue before the trial court because the "bad faith" issue includes additional evidence not available to the panel. *See* maj. op. at 552–553. As a result, the majority holds that collateral estoppel does not preclude Dale from relitigating the arbitration panel's determination that GNIC's conduct was not willful and wanton. *See* maj. op. at 553. I disagree.

In my view, the "willful and wanton" issue and the "bad faith" issue are identical in regard to GNIC's pre-arbitration conduct. In deciding the "willful and wanton" issue, the arbitration panel could review only GNIC's pre-arbitration conduct. The trial court, on the other hand, considered evidence of both GNIC's pre-arbitration and post-arbitration conduct. Obviously, GNIC's pre-arbitration conduct did not change between the time it was considered by the panel and the trial court. Thus, the pre-arbitration conduct before the trial court was *identical* to the pre-arbitration conduct evaluated by the panel. In other words, the issue of GNIC's pre-arbitration conduct presented to the trial court was the exact issue already determined by the arbitration panel.

Because the majority does not recognize that these issues are identical, it allows Dale to relitigate the issue already determined by the arbitration panel's final judgment. This holding contradicts the fundamental purpose of collateral estoppel. As outlined above, the purpose of collateral estoppel is to protect a defendant from relitigating an issue that has already been determined in a valid and final judgment. *See Smith,* 938 P.2d at 113. In this case, the arbitration panel scrutinized GNIC's pre-arbitration conduct and determined that it was not willful and wanton. Then, in the context of a bad faith claim, Dale asked the trial court to evaluate GNIC's pre-arbitration conduct a second time, attempting to obtain a different result. This is precisely the situation that collateral estoppel is designed to avoid.

The majority insists that because Dale introduced additional evidence, the issue before the trial court is completely different from the issue decided by the arbitration panel. The majority does not recognize that in regard to GNIC's pre-arbitration conduct, the trial court and the panel addressed identical issues. Because these issues are identical, I believe that all the elements of collateral estoppel are satisfied and that the trial court properly precluded Dale from relitigating the issue of GNIC's pre-arbitration conduct.

### B.

As for GNIC's post-arbitration conduct, the trial court excluded evidence of such conduct, finding that it was irrelevant to a determination of bad faith. Nevertheless, the majority relies on such evidence in holding that the elements of collateral estoppel have not been satisfied. In my view, the majority is not free to consider this evidence because the trial court did not clearly abuse its discretion.

Trial courts have considerable discretion in ruling on the admissibility of evidence, and they enjoy broad discretion in determining the relevancy of evidence. *See People v. Ibarra,* 849 P.2d 33, 38 (Colo.1993). A trial court's ruling on a matter within its sound discretion will not be reversed, unless there is a clear abuse of discretion. *See People v. District Court,* 933 P.2d 22, 26 (Colo.1997). If there is no clear abuse of discretion, we will not substitute our judgment for that of the trial court. *See People v. Scott,* 626 P.2d 1130, 1131 (Colo.1981). An abuse of discretion exists only if the trial court's decision was manifestly arbitrary, unreasonable, or unfair. *See People v. Gibbens,* 905 P.2d 604, 607 (Colo.1995).

The trial court excluded evidence of GNIC's post-arbitration conduct involving the nine-party check because it found that such evidence was irrelevant to a showing that GNIC acted in bad faith. In ruling on this issue, the trial court pointed out that a number of parties, namely the health care providers, had provided services to Dale without receiving payment. Thus, the trial court reasoned, GNIC issued the nine-party

check to ensure that each party who had provided services would be properly paid. The trial court observed that this practice, which was common in the insurance industry, was designed to avoid multiple liability and not to harass an insured in bad faith. Based on these reasons, the trial court ruled that GNIC's post-arbitration conduct involving the nine-party check had no relevance to the issue of bad faith.

In my view, the trial court's exclusion of the post-arbitration evidence was not a clear abuse of discretion. The trial court articulated a rationale that was not "manifestly arbitrary, unreasonable, or unfair." In these circumstances, we do not substitute our judgment for that of the trial court. Therefore, we are not free to consider the evidence of GNIC's post-arbitration conduct in determining whether the elements of collateral estoppel have been satisfied.

Accordingly, I concur in part and dissent in part.